## AN ABANDONED BURYING GROUND REVERTS TO FORMER OWNERS.

Court of Appeals for Licking County.

CITY OF NEWARK v. HARRIET B. CRANE ET AL; AND CITY OF NEWARK v. JAMES W. BURNETTE ET AL.

Decided, May, 1914.

*Land Dedicated for a Specific Use Can Not be Diverted to Other Uses —Municipality Can Not Hold as Trustee and Adversely—Fee Remains in the Heirs of the Patentee—And Upon Abandonment of the Original Purpose of Dedication the Land Reverts to Them— Common Law Dedication—Statute of Limitations—Adverse Possession.*

1. Where an owner dedicates land to the public for a particular use, specifying the use and imposing restrictions for the dedication as expressed the land can not be applied to any other use or the restrictions disregarded.
2. A city holding land as trustee for the use of the public as a cemetery can not, at the same time, hold it adversely and for its own benefit.
3. Where land was dedicated to the town of Newark for a burying ground, and the city council of said town subsequently passed an ordinance prohibiting any further burials in the land so dedicated and ordering the removal of the remains buried therein, the ordinance was a valid exercise of the police power of the city and operated as a complete abandonment of the dedicated use and the land would revert to the original owner, or his heirs. When the property is no longer desired, or the purpose for which it was dedicated attainable, it will revert to the dedicator.
4. Upon abandonment by a town of the public purpose of the dedication of the land, the property reverts to the original donor.
5. Where a city or town has by its own act abandoned the use and violated the conditions specified in a deed, it can not retain the grounds for any other purpose.
6. That a city may acquire title to land under the statute of limitations, by such adverse possession as is necessary to convey such title to land is not doubted: but the very foundation elements of adverse possession are wanting when the only possession is permissive possession for a dedicated use and while the city holds control of these premises as a grave yard the defendant could not take possession.

7. A common law dedication does not convey a fee.
8. In the Burnette case the fee in the land never passed out of the
   heirs of the patentee, but were subject only to the use of the
   public as a cemetery, and where the city abandoned that use the
   premises revert to the descendants of the patentee free from the
   dedicated use. Such dedication, if there were àny dedication, was
   a common law dedication, and its use would be merely permissive,
   and not adverse and the town or city of Newark would have no
   title and no other possessory rights; and the use and control of
   the grounds was not adverse to the dedicated use. In such case
   its use would not start the statute of limitations. Nothing but an
   open, notorious, visible, hostile and inconsistent act of possession
   could have that effect.

*Ralph Norpell*, City Solicitor; and *Fitzgibbon, Montgomery & Black*, for plaintiff.

*Owen Nash* and *Craighead & Van Pelt*, contra.

VOORHEES, J.; SHIELDS, J., and POWELL, J., concur.

These cases were submitted together.

It will be sufficient in order to present the real issues in this case to state the following facts:

In January, 1801, a patent was issued to John Cummings, John Burnette and George W. Burnette, for section four, township two, range twelve, containing 4220 acres of land, and the premises embraced in the controversy in this suit, that is, the grave-yard, were a part of said section.

On May 15 and 19, 1814, John and George W. Burnette having died, the heirs of George W. Burnette conveyed their interest in said premises to John N. Cummings and John W. Burnette and Harriett Burnette, heirs of said John Burnette.

On December 6 and 14, 1814, John W. and Harriet Burnette and John N. Cummings, deeded to William C. Schenck an undivided interest in said land, amounting to a one-third interest in the whole tract. The recitals in this deed and the other deeds mentioned exhibit the chain of title and the amount of their respective shares, and show the relation of the parties and their respective shares in said land.

On June 20, 1817, an amicable partition suit was begun between Cummings, Schenck and James W. and Harriet Burnette, for the partition of the residue of the lands which remained

unsold. This land included both inlots and outlots in the town of Newark, Ohio. It is not claimed that the lands known as the grave-yard were set off to anybody in said partition proceedings. The plat in partition record A, June term, 1817, of the Court of Common Pleas of Licking County, Ohio, page 7, attached to the record on page 9 of the bill of exceptions shows the old grave-yard.

The plat on page 7 in the record of said partition suit, is the only one of importance in this case. This plat shows the shape and boundaries of lot F, which was set off to the Burnettes, and which cornered on the grave-yard. This plat also shows the three-cornered strip subsequently deeded to the town of Newark by Crane and wife, in 1848, ''for the sole purpose of being used as a burying ground for the use of said town of Newark and for no other purpose whatever.''

In all these conveyances and proceedings the body of the grave-yard remained unchanged and undisposed of. Just when the grave-yard was originally laid out as such is not disclosed, but it was a grave-yard in 1871. It is not contended that it was ever deeded to any person or association for that purpose. The only deed is for the small three-cornered addition made in 1848. It is not contended or claimed that there was any statutory dedication or any proceeding to condemn or appropriate this ground for a grave-yard and the right of the public to use it for such purposes arises, if at all, by way of common law dedication, based on the fact that the original owners permitted it to be used for that purpose.

On February 8, 1826, the town of Newark was incorporated, and the municipal authorities in November, 1868, prohibited any further burials in this grave-yard.

On July 29, 1875, an ordinance was passed by the council of said town, among other things providing for notices to friends to remove the bodies buried therein by November 1 of that year, and authorizing the cemetery trustees to proceed after that date to have the bodies and tombstones removed.

On November 4, 1875, a resolution was passed referring the matter of removing the remains of parties buried in the old grave-yard to a special committee consisting of the cemetery trus-

tees and three citizens, which would indicate that the bodies had not been removed.

On September 20, 1877, a further resolution was adopted by said council, reciting the dilapidated condition of the cemetery, *et cetera,* and directing the trustees to expend some money to repair and improve the cemetery. 'These proceedings were reported to the cemetery board and it employed two persons to make a plat of the ground and graves, taking care to preserve the monuments and tombstones, so that the same and the remains might be removed and the ground leveled off. A plat was prepared, beginning with the year 1850, under date of 1878.

On April 14, 1882, the board of education of Newark instituted a proceeding against the trustees of Newark township and the city of Newark and the unknown heirs of Cummings, Burnette, Crane and Schenck, to condemn the ground known as the old grave-yard for a school house site. A jury was impaneled and a verdict returned assessing the value of the premises in three tracts aggregating $7,500. In that proceeding the then solicitor of the city filed what he called an answer, asserting that the city was the real owner.

The heirs of Cummings, Burnette, Crane and Schenck, also filed an answer alleging that they were the owners in fee of the property. The court ordered that when the money was paid in the respective rights thereto should be determined. The board of education never paid in the money and there the matter rested.

In 1888 the picket fence, which had been put up in 1878, was removed and put up in Cedar Hill Cemetery. Instead of removing the grave-stones, as had been ordered in 1878, those doing the work laid them down in the graves and covered them up. One monument still remains standing. How many old graves are still in the ground can not be now definitely known; but the testimony shows that many of these graves and grave-stones are very, very old.

In the reply and testimony in the Crane case it was shown that most of all the burials in the cemetery were before the date of 1848, and Mr. Vanatta says, "that with no burials since 1860 or

1868, very little can be left of any remains; all or nearly all have necessarily disappeared."

On September 11, 1905, the council of said city of Newark passed an ordinance selecting these grounds as a site for a proposed municipal hospital.

On March 6, 1906, these suits were brought by the city to quiet its alleged title in fee, claiming, in the Burnette case, that it has ever since November 20, 1868, been in the open, exclusive, adverse and visible possession of the premises involved in that suit (the Burnette suit), and has thereby become owner, and in the Crane case claiming ownership under the deed of the date of February 14, 1848. These claims the defendants absolutely deny.

In 1909, while these cases were pending and after the answers had been filed, the plaintiff city entered on the premises, laid cement walks diagonally across the same, built a fountain in the center; laid pipes, and strung electric wires, claiming that the premises had become a common and public park. These structures were put up on the premises for the purpose of improving them as the Sixth street park, as stated in the proceedings of the board of public service by the resolutions of July 6, 15 and 24, 1909. The photographs introduced in evidence tend to show the grounds now to be a park and that the city has completely abandoned the use of these premises as a cemetery.

The facts admitted in the pleadings may be summarized as follows:

In the Crane case:

1. Burials have been prohibited since 1850.

2. Burials were prohibited by ordinance in 1868.

3. The Crane deed of 1848 contained restrictions as to the use of the land, stating that it should be used for the sole purpose of a "burying ground, for the use of said town of Newark, and for no other purpose whatever."

4. That as early as 1850, Cedar Hill Cemetery was used.

5. That in 1868 and 1875 remains were ordered removed to Cedar Hill.

6. That the school board instituted proceedings in 1882 to appropriate said land for school purposes.

7. That fences around the grave-yard were ordered removed in 1888.

8. An ordinance was passed by the council to establish a hospital in 1905.

9. A resolution was passed by the council ordering that the remaining bodies and the tombstones be removed.

10. A fountain and other structures for a park were erected by the city.

11. Most of the bodies had been buried in said cemetery prior to 1848.

In the Burnette case:

1. Burials were prohibited as early as 1850.

2. Burials were prohibited by ordinance in 1868.

3. The premises were used as a burial place from 1817 to 1868.

4. Cedar Hill was established about 1850 and has ever since been continuously used as a grave-yard.

5. Burials in said cemetery in the Burnette lands or premises were prohibited in 1868.

6. All remains and tombstones were ordered removed in 1875.

7. Proceedings of the board of education to appropriate the premises for school purposes were instituted in 1882, but never completed.

8. The fences around said cemetery were removed in 1888.

9. Proceedings were had by council to appropriate said premises for a hospital site, but never consummated.

10. A fountain and other structures for a park were erected by the city on the premises.

It is unnecessary to go into detail as to the various acts and proceedings had by the town of Newark with reference to the lands and premises involved in these suits. For the purposes of this opinion, it will not be necessary to refer to the facts, ordinances, resolutions and acts of the town of Newark, further than to say that the *only deed* executed was the *Crane deed,* of 1848, for the three-cornered strip.

At the January term of the court of common pleas, to-wit, January 25, 1912, it was ordered, adjudged and decreed, among

other things, that the petitions of the plaintiffs in cases numbered 13789 and 13790 be, and the same were dismissed.

The causes came into this court on appeal from the court of common pleas. They have been ably argued by council on both sides by briefs, as well as by oral argument. In the short time this court has had to consider the questions involved, and to assign reasons for its conclusion, it can not be expected that we will go into much detail in stating our conclusions.

By the deed executed in 1848, by Crane and wife to the said town of Newark, the three-cornered strip, shown by the plat, was deeded "for the sole purpose of a burying ground and for no other purpose whatever." This conveyance was to the municipal corporation of the town of Newark, for a public purpose, namely: for a burial ground, and for no other purpose. The town of Newark abandoned said premises as a burial ground, as shown by the various acts of the municipality and, therefore, the title reverts to the original owners or their heirs, by the plain terms of the deed.

In the case of *South Park Commissioners* v. *Montgomery Ward & Company*, 93 N. E., 910 (248 Ill., 299), it was held:

"Where an owner dedicates land to the public for a particular use, specifying the use and imposing restrictions, if the dedication is accepted the land can not be applied to any other use or the restrictions disregarded."

In the case of *Kansas City* v. *Scarritt*, 69 S. W., 283 (169 Mo., 471), Syllabi 1 and 2 are as follows:

"1. A square was marked 'donated for grave-yard,' on an original plat filed by the owner with the recorder of deeds. Five years later a city was incorporated, including within its limits the grave-yard. *Held:* That the legal title to the square remained in the original owners, subject to the use of the public, for the purpose of dedication; it not having passed to the city by dedication, as the latter was not in existence at that time.

"2. A city holding land as trustee for the use of the public, as a cemetery, can not at the same time hold it adversely and for its own benefit."

*Mayor, etc., of City of Newark, New Jersey,* v. *Watson et al,* 56 N. J., 667 (29 Atl., 487), Syllabus 2:

"The plaintiff, a municipal corporation, held lands under a grant from the proprietors of East Jersey for burial purposes, to be appropriated for no other use or uses whatsoever. An ordinance of the municipality and an act of the Legislature prohibited the use of such lands for burial purposes. *Held:* That the title to the lands thereby reverted to the proprietors."

In the case of *Fulton (Village), Lessee of,* v. *John Mehrenfeld,* 8 O. S., 440, we find the following citations:

"Where land was dedicated to the city of Youngstown for a burying ground, and the city council of Youngstown subsequently passed an ordinance prohibiting any further burials in the land so dedicated, and ordering the removal of the remains buried therein, the ordinance was a valid exercise of the police power of the state and operated as a complete abandonment of the dedicated use, and the land would revert to the original owner or his heirs. *Young* v. *Commissioners,* 7 O. F. D., 171 (51 Fed. Rep., 585, 591), 1892; 1893, *Mahoning Co. (Comrs.)* v. *Young,* 9 O. F. D., 202, 206 (59 Fed. Rep., 96, 99; 8 C. C. A., 140; 16 U. S. App., 588).

"When the property is no longer desired, or the purpose for which it was dedicated attainable, it will revert to the dedicator." 76 O. S., *Railroad Co.* v. *City,* at page 504.

"Upon abandonment by a town of the public purpose of a donation of the lands, the property reverts to the original donors." 75 Miss., 846; *Patrick* v. *Y. M. C. A.,* 120 Mich., 185 (79 N. W., 208).

In the Crane deed, the language was: "for the sole purpose of being used as a burying ground for the use of the town of Newark, *and for no other purpose whatever.*"

These authorities make it clear that when the city abandoned the use of the premises conveyed as a burying ground, and attempted to divert them, first, to a school house site, later to a hospital site, and afterwards to a park, the title *reverted* to the heirs of Mrs. Crane, the grantor.

The city has, by its own unequivocal acts, abandoned the use and conditions specified in the Crane deed, and can retain the ground for no other purpose.

The Burnette case:

As to the Burnette case, we find: That the fee in the land in this case never passed out of the heirs of the patentee. It

has always been in them, subject merely to the use of the premises as a cemetery; that by plain and unequivocal acts, the city has abandoned that use; that the premises have reverted to defendants free from the dedicated use.

The dedication of the Burnette tract, in case No. 1300 (if there was a dedication), was a common law dedication, and its use was merely permissive and not adverse. When these graveyard grounds came into the corporate limits of the town of Newark, it had no title and no other possessory rights. The use and control of the grounds was not adverse but in entire harmony with the dedicated use. Hence, its use did not start the statute of limitations. Nothing but an open, notorious, visible, hostile and inconsistent act of possession on the premises could have that effect, and no such act was done, or is claimed to have been done.

In 1888 the city took the fence down, threw the premises open to intruders and trespassers, and never after that sought to guard or protect the grounds, or to respect their character and sacredness as a burial place. This was an abandonment of the dedicated use.

*Kansas City* v. *Scarritt,* 169 Mo., 471 (69 S. W., 283), *supra:*

"That a city may acquire title to land under the statute of limitations by such adverse possession as is necessary to confer such title is not doubted; but the very foundation elements of adverse possession are wanting when the only possession is permissive possession for a dedicated use. And of course while the city held control of this as a grave-yard, the defendants could could not take possession."

*Patrick et al* v. *Y. M. C. A. of Kalamazoo,* 120 Mich., 185 (79 N. W., 208).

"A common law dedication does not convey a fee."

Syllabus 6, *supra,* is as follows:

"A church society, having accepted lands for a period of time under a common law dedication to its use, executed a quit-claim deed to a certain person who had previously purchased the reversionary interest of a part of the dedicator's heirs, and who conveyed the land to a Young Men's Christian Association, which built a valuable building on the land.

"*Held*: No evidence of hostility and the assertion of an adverse claim entitling the association to claim the land as against the dedicator's other heirs by adverse possession."

Syllabus 7:

"After a church society had erected a building on a lot dedicated to the use of one of the first four religious denominations forming a society in the town and erecting a building on the lot, it conveyed the lot to a Young Men's Christian Association, which demolished the church building and erected a building adapted to its own wants.

"*Held*: An abandonment of the use for which the lot was dedicated, entitling the holders of the reversionary interest to the lot."

*Campbell et al* v. *City of Kansas,* 13 S. W., 897 (102 Mo., 326, *343*). Syllabi, 1, 2, 3, 4 and 5 are as follows:

"1. A square was marked 'donated for grave-yard' on an original plat, not assigned or acknowledged by the proprietors of a town-site, but filed with the recorder of titles by one of them, who soon after used it at a public sale of lots. The plat, and the use of the land for interments were acquiesced in by the proprietors. *Held*: Sufficient evidence of a dedication *in pais.*

"2. The donors of land dedicated to a city for a grave-yard have, while the public use lasts, no right to a concurrent possession subject to a reasonable use of the public, and can not maintain ejectment against the city to recover such a possession.

"3. Land dedicated to a city for a cemetery, which has no longer the character and name of a grave-yard, but is used as a public park reverts to the donor, who may recover in ejectment against the city, which in defense denies the abandonment.

"4. In such case, the question will not be considered whether the land can be appropriated and used for other charitable purposes germane to the original one, in accordance with the equitable doctrine of *cy pres.*

"5. In 1857, land in a city, dedicated and used as a cemetery was by ordinance 'vacated for grave-yard purposes.' In 1866, the council, by published notice, required all who had friends buried there to remove the remains. Many removals were made, but the majority of the remains were left to be taken away by the city. In 1869 it was used by the workhouse force, breaking rock. In 1870, earth was taken from it, and used too fill a street. In 1877, the city engineer was instructed by ordinance 'to grade the old grave-yard and get it into shape for a public park.'

"This was done the next year. The grading went below all the graves, except, perhaps, a few in the lower part, on which four to ten feet of earth were placed. Trees were planted, grass grown, and walks laid out. It was named and recognized by the city as a park. No visible grave or monument remained. During the final grading, in 1878, the removal of the remains exhumed was stopped, and the bones of from eleven to eighty-four bodies were reinterred, in small boxes, as near the places from which taken as possible. Small stones, bearing numbers, but no names, were at these points either put five or six inches under ground, or they had sunk to that depth at the time of the trial, shortly before which the location of many of them was brought to light by agents of the city by 'prospecting through the park with a sharp iron rod.' *Held*: Sufficient evidence of abandonment."

Without pursuing the discussion further, we are of the opinion that the city or town of Newark has no right, title or interest in these premises, in either case, and that the petitions should be and they are dismissed, at the costs of the plaintiff.

It is therefore ordered by the court that said plaintiff remove all of said pipes, poles, electric wires, cement walks, and the fountain from said premises, and restore the same to the condition that they were in before such pipes, poles, electric wires, cement walks and fountain were placed in and upon said premises, and that the same be done within six months from the date hereof.

It is further ordered that a decree be drawn in accordance with the opinion of the court herein. Exceptions.

Motion for new trial, if one is filed, overruled. Exceptions. Ten days allowed for finding of fact and conclusions of law, Statutory time for bill of exceptions.