ROBERTSON *et al. v.* MT. OLIVET CEMETERY CO. *et al.*

(*Nashville.*   December Term, 1905.)

**CEMETERIES.** Lots in, do not pass by will as real estate, when. Tenure and rights of sepulture therein. Case in judgment.

An executor purchased a lot in a cemetery for the interment of his testator, taking from the trustees of the cemetery company a mere certificate of purchase, showing that it was for the benefit of the estate of the testator. The testator had children by a first wife, and also by the second wife, who was left his widow. The widow, by a previous marriage, had two children. Under the will of the testator, his widow was entitled to one-sixth of his estate, and her children by her former marriage, claiming her interest in the estate of the testator, assumed that they were entitled to a one-sixth interest in said burial lot, and sold one of the subdivisions into which the original lot had been divided. The children and grandchildren of the testator filed the bill in this cause against the stepchildren and their vendees impeaching said sale, and prayed that the conveyance executed in pursuance thereof be cancelled as a cloud upon their interests in said lot, and that the parties to such sale be perpetually enjoined from interfering therewith.

*Held*: Complainants were entitled to the relief prayed, because: (1) The estate of the testator, by the purchase of the executor, acquired no absolute interest in or dominion over the lot, but merely a qualified and usufructuary right therein, for the purposes to which it was devoted by the cemetery association, and the wife, by the will devising her a one-sixth interest in the estate, took no title in and to said lot which could pass on her death to her children by a former marriage.

Cases cited: In re Waldron's Petition, 26 R. I., 84; Gardner v. Swan Point, 20 R. I., 646; Cemetery Co. v. Goodwin, 101 Va., 605; Hook v. Joyce, 94 Ky. 450; McWhirter v. Newell, 200 Ill.,

Robertson v. Cemetery Co.

583; Kincaid's Appeal, 66 Pa., 411; Page v. Symonds, 63 N. H., 17; Partridge v. First Independent Church, 39 Md., 631; and Dwenger v. Geary, 113 Ind., 106.

(2) Only the testator, his widow and his children by both marriages, and not the children of his widow by a former marriage, had an interest in said lot as a place of sepulture.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —JOHN ALLISON, Chancellor.

HILL MCALISTER, for complainants Robertson et al.

JAMES L. WATTS, for defendants Marshall et al.

M. B. HOWELL, for Cemetery Company.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The defendant, the Mt. Olivet Cemetery Company, is a corporation organized under the laws of this State for the purpose of acquiring, opening up, and beautifying property for cemetery purposes, and acting under its charter it acquired a tract of land in the neighborhood of the city of Nashville, and divided the same into lots suitable for the interment of bodies. In the year 1851 ex Gov. Aaron V. Brown died leaving a will in which

he divided his estate between Cynthia H. Brown, his wife, and five children, four of whom were born to him by a prior marriage, the fifth and youngest being the issue of the marriage with his second wife, afterwards his widow. Subsequent to his death one —— Dortch, who had qualified as his executor purchased a lot in Mt. Olivet Cemetery, taking from its trustees a certificate of purchase indicating that it was for the benefit "of the estate of Aaron V. Brown." Upon this lot were from time to time buried the bodies of Gov. Brown, and a number of his children and grandchildren, who died at later dates, and also that of Cynthia H. Brown, his widow. A number of years prior to the filing of the present bill the heirs of Gov. Brown, believing the lot, as originally laid off, unnecessarily large, with the consent of the trustees of the cemetery subdivided it and made sales of certain of these subdivisions which were unoccupied by the bodies of the family to strangers in blood.

Mrs. Cynthia H. Brown, at the time of her marriage to Gov. Brown, was a widow. By her first marrige she had two children. J. E. and Narcissa P. Saunders, who are made defendants to the present bill. These parties assuming, in the right of their mother, who under the will of Gov. Brown was entitled to one-sixth of the estate, that they had a one-sixth interest in the burial lot as originally laid off, sold to the defendants Marshall and wife, one of these subdivisions, this being done with the consent of the trustees in charge

of the cemetery. These purchasers, claiming title by virtue of this sale, were preparing to erect a vault on this lot when the present bill was filed by the complainants, who are the children and grandchildren of Gov. Brown, impeaching this sale and asking that the conveyance from the two Saunders to Marshall and wife be held as a cloud upon their interest, and that the vendees be perpetually enjoined from interfering with this property.

The chancellor dismissed the bill upon the ground that relief was asked with regard to property, or an interest in property, peculiar in its character and over which a court of equity could not exercise control; on appeal, however, the court of chancery appeals has set aside that decree and has granted the relief prayed for in so far as it enjoins the Marshalls from, in any wise, exercising control over or ownership in this property. We are asked by the defendants to review this last decree.

As has been stated, at the time of the purchase of the original lot by the executor Dortch, the trustees of the cemetery instead of making a deed, simply issued a certificate showing that this purchase was for the benefit of the estate of Gov. Brown. Thus the legal title to the property was left in the corporation where it remains to this day. That it has been understood by all parties the corporation exercised a dominant control over this lot is indicated by the fact that in the subdivision that was made of the original purchase, and of the sales from that subdivision by the children and grandchildren of

Gov. Brown, as also in the attempted sale of the Saunders to the Marshalls, its consent to such change of interest was deemed necessary and accordingly was obtained.

So it is that all the parties evidently regarded that property in a cemetery lot was peculiar in character, and lacked some, if not many, of the elements found in other property, real and personal. That such an interest is peculiar, we think is the result of the holding of well-considered cases. *In the petition of Emaline A. Waldron et al.,* a case decided by the supreme court of Rhode Island, in March, 1904, reported in 58 Atl., 453, 67 L. R. A., 118, 106 Am. St. Rep., 688, it was held that a residuary devise in general terms to a testator's widow would not, as against his children, pass title to a burial lot upon which members of the testator's family were buried. In an earlier case, that of *Gardner* v. *Swan Point,* 20 R. I., 646, 40 Atl., 871, 78 Am. St. Rep., 897, where a widow claimed title to a burial lot as a residuary legatee, it was said by the court that in the cases "of churchyards and cemeteries it had been held that, though a deed may run to a grantee, his heirs and assignees, he takes only an easement or right of burial rather than an absolute title. So long as the land is used for burial purposes he cannot exercise the same right of ownership as in other real estate." In *Derby* v. *Derby,* 4 R. I., 414, by the will of the testator the executor was empowered to sell all the real estate to pay pecuniary and residuary legacies, and the question arose whether he should sell a

116 Tenn.—15

lot in the cemetery where the testator's first wife was buried. The court said: "This lot was purchased by the testator for a burial place for his family. That he should deliberately intend that it should be sold and go into the hands of strangers it is difficult to believe without the most express direction. It is the more difficult in this case as within it are deposited the remains of his former wife, and could he intend that those remains should be disturbed? He had devoted this lot to pious and charitable use as a place of burial for members of his family. Did he mean to revoke it? It could not have been in the contemplation of the testator that this lot should be sold out of his family, nor could he have contemplated it as property in any such sense as to fall within the power given to the executor, and with an express direction to sell this particular lot we think we shall not be warranted in advising the executor to sell it."

In *Roanoke Cemetery Co.* v. *Goodwin,* 101 Va., 605, 44 S. E., 769, this peculiar nature of an interest in a cemetery lot and of the relation of a purchaser thereto are equally recognized. It was there held that the purchaser acquired no absolute interest or dominion over such lot, but merely a qualified and usufructuary right for the purposes to which the lots were devoted and for which they were set apart by the company; that their holding was in the nature of an easement with the exclusive right to bury in the lots subject to the general proprietorship and control of the association. To the same effect are

*Hook* v. *Joyce,* 94 Ky., 450, 22 S. W., 651, 21 L. R. A., 96; *McWhirter* v. *Newell,* 200 Ill., 583, 66 N. E., 345.

Other courts have declined to recognize the right of a lot holder in a cemetery even as rising to the dignity of an easement. In *Kincaid's Appeal,* 66 Pa., 411, 5 Am. Rep., 377; *Page* v. *Symonds,* 63 N. H., 17, 56 Am. Rep., 481; *Partridge* v. *First Independent Church,* 39 Md., 631, and *Dwenger* v. *Geary,* 113 Ind., 106, 14 N. E., 903, such a right is treated as something in the nature of a license—a mere right of burial.

A very extensive and learned note to the case of *Waldron's Petition,* supra, will be found in 67 L. R. A. These cases and many others are collated and commented upon. The reason which controls, whether expressly stated or only by inference to be found in the opinions delivered by the various courts, is possibly as well expressed by the supreme court of Rhode Island in the case first referred to as elsewhere. In that case, as has been stated, it was held that a burial lot did not pass under a general residuary devise, but descended to the heirs as intestate property. Said the court: "It is a family burial lot. It is that fact alone which gives a peculiar limitation to its tenure. The heir takes subject to all the conditions for which the ancestor held it. A sort of trust attaches to the land for the benefit of the family. Neither the widow nor the child can be excluded from it for want of title, yet such a result might follow if the tenure was like that of other real estate."

We are satisfied that these holdings are sound, and

that if this lot purchased by the executor had been acquired by the testator himself in his lifetime, it would not have passed under his will dividing in general terms his estate between his widow and his children but that as in a case of intestacy, it would have gone to his heirs, as a place of sepulture for Gov. Brown and his widow, and those who were of Gov. Brown's blood; and that the defendants, J. E. and Narcissa Saunders, would not have acquired even an easement of burial, either before or after the death of their mother in this lot. Then, does the fact that this lot was acquired by an executor of Gov. Brown, conceding that it was purchased with money of the estate, change either the title or devolution of this property? We think not. It was bought for the estate of Gov. Brown. The lot was purchased with a view to the interment of his body and the erection of a monument thereon, and as a burial place for those of his blood who came after him. That his widow was entitled at her death to have her body repose in that lot by the side of her husband is unquestioned. It is equally true that the child of this second marriage, as well as the children of the first marriage of Gov. Brown, and their descendants are entitled to sepulture in it. But we do not think that the defendants, who were the stepchildren of Gov. Brown, can any more claim an interest in the lot on account of inheritance from their mother than if strangers to her, she had undertaken in her lifetime to convey to them an interest in the property. While it is true, as has been stated, that under the will of her

Robertson v. Cemetery Co.

husband, Mrs. Brown had a one-sixth interest in his estate, yet this interest could only be ascertained upon a proper settlement of the estate. In this settlement the money used for the purchase of the lot if in fact money of the estate was so used would be taken into account, and she would be credited with her proportionate interest in that money, but it does not follow from this that she would have a property right in the lot which, upon her death would pass to the children of a former marriage.

We think that the complainants have a right to a decree setting aside the conveyance of the Sanders to Marshall and wife, and a perpetual injunction as against the latter. A decree will be entered in accordance with this opinion and in addition to what has been indicated above, it shall be adjudged that J. E. and Narcissa Saunders have no title or interest in the property.

The cost of the cause will be paid by the defendants.

McAlister, J., did not sit in this case.