MONETT LODGE, No. 106, I. O. O. F., Respondent,
v. ARTHUR C. HARTMAN, Appellant.

**Springfield Court of Appeals, November 23, 1914.**

1. **CEMETERIES: Implied Contract for Care of Lot.** Acquiescence. Defendant purchased a lot in a cemetery of which plaintiff had control. For a time defendant paid $1.50 per year for the care of the lot. The rate was advanced by the plaintiff to $2 and the defendant refused to make payment. There was no contract by implication on the theory that the defendant acquiesced in the doing of the work or that it was done for his benefit.

2. **CEMETERIES: Liability for Care of Lots.** Regulations. Defendant purchased a lot in a cemetery of which plaintiff had control. Under his agreement he was to abide by the rules of the cemetery association. Provisions and rules under which purchase was made are reviewed and examined and it is *held* that there is nothing therein contained which held defendant liable personally for the care of the lot. (FARRINGTON, J., dissenting.)

Appeal from Barry County Circuit Court.—*Hon. Carr McNatt,* Judge.

REVERSED.

*T. D. Steele* for appellant.

(1) There was a total failure of proof of any contract or agreement to pay anything and the court should have sustained defendant's demurrer to the evidence. Kendrick v. Harris, 156 S. W. 490. (2) There was no showing of any personal liability.

*D. H. Kemp* for respondent.

(1) Even if there was no express contract, the law implies a promise to pay what is right under facts and circumstances such as appear in this case.

1 Beach on Contracts, sec. 642. (2) There was substantial evidence on which the jury would be warranted in finding a verdict for plaintiff. For the purpose of the demurrer the evidence of plaintiff was admitted. It is only in cases where there is an entire absence of evidence tending to prove the material allegations in the petition that a preemptory instruction directing a verdict for defendant should be given. Where there is any evidence it must go to the jury who is exclusive judge of its might and sufficiency. Baum v. Fryrear, 85 Mo. 151; Routsong v. Railroad, 45 Mo. 236.

STURGIS, J.—This is a suit begun in a justice of the peace court in Barry county to recover from defendant $4, for "keeping and caring for" a cemetery lot for the years 1912 and 1913. The question for decision is whether defendant is personally liable for this charge as a debt due plaintiff. The plaintiff lodge, as part of its benevolent work, acquired the land and platted a cemetery and in 1905 sold a lot therein to defendant. Defendant's ownership of the lot is evidenced by a certificate, duly issued by the plaintiff, reciting the consideration paid and that "the said Arthur C. Hartman, his heirs and assigns, are entiled to the use of said lot in fee simple for the purposes of sepulcher alone, subject to the rules and regulations governing the I. O. O. F. Cemetery at Monett, Missouri, heretofore adopted by said lodge and subject to amendment by said lodge. Said lot 1, in block 34 not transferable without the consent of the cemetery committee appointed by said lodge, said consent must be in writing. No person shall be buried on said lot except the members of the family and the relatives of said Arthur C. Hartman, except with permission of the cemetery committee. Said lodge reserves the control of said lot as a part of said cemetery in accordance with said rules and regulations."

The record is not altogether clear but it seems that at the time of purchasing the lot plaintiff had the following rules in force: "Section 6. To protect the grounds, and especially improved lots, from injury, by the introduction of careless and casual workmen, who have no special interest in their protection, no workmen shall be employed by proprietors, all work must be done by or through the Sexton of the cemetery. Section 9. The keeping and care of all lots shall be done by the Sexton of I. O. O. F. Cemetery at the following prices per annum: $1.50 for keeping one whole lot; $1 for one-half lot." This last rule is in the nature of fixing a maximum charge to be made by the sexton for doing this work and the evidence shows that under these rules the defendant had agreed with the sexton in charge to pay and had paid to him personally the charge of $1.50 per year to and including 1911. In 1912 the plaintiff changed its rules and method of having the cemetery cared for and put the sexton on a fixed salary to do such work and adopted this rule: "Section 9. The keeping and care of all lots shall be done by the Superintendent of the I. O. O. F. Cemetery at the following prices per annum: $2 for keeping one whole lot; $1 for keeping one-half lot; however, this does not apply to those that have fully paid their sinking funds."

The charges on the various lots were collected about May of each year for that year and in a measure were collected in advance. The defendant, when solicited by plaintiff to pay in 1912, objected to the advance in rates from $1.50 to $2 per year and refused to pay for that year or any future year. This suit was commenced in June, 1913, and seeks to recover for the whole of that year. There cannot, therefore, be an implied contract based on defendant's acquiescence in the work being done for these two years without objection or information that he would not pay.

There are other cemetery regulations adopted by plaintiff, one providing that on the failure to pay for lot keeping for ten years the rights of the person so failing will be considered forfeited and such rights revert back to the cemetery association without notice, and another that no person shall be permitted to bury in said cemetery while indebted for grave digging or lot keeping. There is also a provision whereby a lot-owner by paying a certain sum may have his lot cared for perpetually without further charge.

Does any or all of these facts raise a personal obligation on a lot owner from which he cannot escape to pay yearly and perpetually a sum which may be increased from time to time for the care and keeping of such lot? We think not. If so, the obligation would follow the ownership of the lot and become a personal debt of his heirs and assigns. It would raise such personal obligation against a person who, as an act of generosity or charity, might be willing to pay the purchase price of a lot for the burial of a friend or stranger.

We are not discussing the right of plaintiff to adopt and enforce the rules it has as regulating and controlling the use and care of the cemetery or enforcing the forfeiture provisions. That is not before us. Nor are we discussing any moral obligation of the defendant to pay for properly caring for a place of burial for those related to him. That obligation would rest on defendant regardless of the place of burial. We are now discussing the legal obligation to pay plaintiff, and are reminded that enforceable contracts are not made except by consent of the parties and no one becomes indebted to another by contract against his will.

It may be that the owners of this cemetery might by placing a specific stipulation to that effect in the certificate or conveyance of the lots have imposed on the grantee accepting the same a personal obligation

to pay for the keep of the lots an amount then fixed or to be fixed and changed within reasonable limits by proper authority. The acceptance of a conveyance of land with an express recital of the obligation of the grantee to pay money or discharge an obligation makes the grantee personaly liable. [Fitzgerald v. Barker, 85 Mo. 13; Smith v. Davis, 90 Mo. App. 533; Galbraith v. Pennington, 184 Mo. App. 618.]

But the agreement to pay must be specific and the mere fact of a lien or obligation being against the property conveyed is not sufficient. [Mason v. Barnard, 36 Mo. 384, 392; B. & L. Ass'n v. Grocer Co., 82 Mo. App. 245; Keifer v. Shackett, 85 Mo. App. 449; Ins. Co. v. Irwin, 67 Mo. App. 90, 94; Hall v. Morgan, 79 Mo. 47, 52.]

There is nothing in the recitals of the certificate or conveyance of this burial lot making a direct or specific promise or agreement of the vendee to pay for the future care of the lot; in fact, there is nothing at all said about paying for such future care. It is the use of the lot "for the purposes of sepulcher" that is stipulated to be subject to the rules and regulations adopted by the lodge and subject to amendment thereby. This plainly refers to the right to regulate the manner of burial, etc., and is confined to matters connected with the burying of the dead therein and in no way imposes a personal obligation to pay for the future care of the lot or to reimburse the lodge for doing so. Nor can the reservation of the "control of said lot as part of the cemetery" be construed to impose a personal obligation on the grantee to pay for the future care of the same. Should one person rent or sell another tract of land and reserve the control over it as to its use for residence purposes, such person could not himself improve the property with walks and lawns and dwelling houses and recover from the grantee the cost thereof. It seems to us that by the most liberal construction no personal obliga-

Monett Lodge v. Hartman.

tion was imposed on defendant to pay for the future care of this lot, or rather to reimburse plaintiff for doing so.

The defendant stood on his demurrer to the evidence, as he had a right to do in law, and no instructions were asked or given to the jury. The jury, being without chart or compass as to the law, rendered "rough justice," but we must look to defendant's legal liability and doing so the judgment will have to be reversed.

It is so ordered.

*Robertson, P. J.,* concurs.

*Farrington, J.,* dissents in a separate opinion.

## DISSENTING OPINION.

FARRINGTON, J.—I am unable to concur in the majority opinion. Briefly, my reason: When defendant purchased the lot his certificate expressly provided that his bargain was "subject to the rules and regulations governing the I. O. O. F. Cemetery at Monett, Missouri, heretofore adopted by said lodge and *subject to amendment by said lodge."* The certificate also contained the following provision: "Said lodge reserves the control of said lot as a part of said cemetery in accordance with said rules and regulations." Defendant's acceptance of the certificate containing these provisions bound him to an observance of requirements thereunder. For some years he recognized their binding force by paying the price fixed by the cemetery association, but when they raised the price fifty cents a year, just what he had agreed they could do, he refused to pay up. The course of the defendant in recognizing the liability fixed by the rules and regulations at one dollar and fifty cents per year shows what construction the parties placed on the contract, and when parties have themselves placed a construction on ambiguous provisions of a contract the courts

should follow that construction. [The St. Louis Gas-light Co. v. City of St. Louis, 46 Mo. 121; Rose v. Carbonating Co., 60 Mo. App. 28; City of St. Louis v. Laclede Gas Light Co., 155 Mo. l. c., 19, 55 S. W. 1003.] In the case of City of Joplin v. Wheeler, 173 Mo. App. l. c. 607-608, 158 S. W. 924, the rule is so declared by this court. The right to forfeit, and to prevent the defendant from burying in the lot while in arrears, and other restrictions, were merely means of enforcing the obligation to pay in addition to a personal liability. The only limitation that could be placed on the rules and regulations to be made in the future by the cemetery association would be that they must be reasonable; and it would certainly be a more reasonable manner of enforcing the obligation to pay by holding him personally for two dollars a year than by forfeiting his lot which cost him much more than that and after some of his dead were buried there. He made his own contract and it is not for the courts to make a different one for him. I think, therefore, that the "rough justice" verdict conforms in all respects to the established legal principles governing parties to contracts. The judgment should be affirmed.