WELLS *v.* DANIELL.

1. CEMETERIES—WATER FOR PERSONAL CARE OF LOTS.

Refusal of board of cemetery trustees to furnish water for care of lot from water system in order to coerce payment of large sums for annual or perpetual care rates is an unreasonable interference with right to give personal care to portion of lot purchased prior to establishment of said rates.

2. SAME—RIGHT OF PERSONAL CARE.

Heirs-at-law of transferee of portion of lot from original grantee in city cemetery have right to give personal care by conforming to reasonable rules and regulations but such right may not be taken away by rule or regulation.

3. SAME—ACCEPTANCE OF ANNUAL OR PERPETUAL CARE RATES.

Board of cemetery trustees may establish annual and perpetual care rates, leaving acceptance thereof optional, but may not coerce acceptance by arbitrary refusal to otherwise supply water for caretaking purposes.

4. SAME—TRANSFER OF RIGHTS IN CITY CEMETERY LOT.

Purchaser of lot in city cemetery who received certificate of purchase running to him and his heirs did not have title in fee, therefore, he could not convey fee title but his rights therein were transferable.

5. SAME—ESTOPPEL.

    Claim by board of cemetery trustees that transferee of portion of lot from grantee had no rights therein is stale and unavailable where cemetery superintendent aided in bringing it about and transferee's rights have been recognized for upwards of 20 years.

Appeal from Menominee; Bell (Frank A.), J. Submitted January 18, 1934. (Docket No. 37, Calendar No. 37,475.) Decided March 6, 1934.

Bill by Artemus Wells and others against Edward Daniell and others, as board of cemetery trustees of city of Menominee, for an injunction, an accounting and other relief. Decree for plaintiffs. Defendants appeal. Affirmed.

*Ryall & Frost* and *M. P. Sawyer,* for plaintiffs.

*Thurman B. Doyle,* City Attorney, for defendants.

WIEST, J. Defendants, as trustees, operate a public cemetery owned by the city of Menominee in its proprietary capacity. In January, 1889, Benjamin J. Brown received a certificate of purchase setting off, granting and confirming unto him and "his heirs, forever, lot 1, section F in the Menominee Riverside Cemetery for burial purposes, and no other; subject, however, to such ordinances and orders as may be promulgated by the city council of the city of Menominee and the cemetery trustees, for the care, management and preservation of such cemetery and grounds, the tombs and monuments therein."

The lot so purchased was large and, in August, 1902, Mr. Brown and his wife conveyed the west 44 feet thereof to John W. Wells, his heirs and assigns. The superintendent of the cemetery was not only aware of the transfer but was active in

having it made. The deed to Mr. Wells was presented to the city clerk, who was also the clerk of the cemetery board, for record in February, 1909, and the clerk made a notation thereof on the record of the deed to Mr. Brown and a recital that it was sent to him for record—"but Benjamin J. Brown is dead, and this notation is all I can do."

Soon after the purchase Mr. Wells had some remains transferred to the lot.

Plaintiffs are heirs-at-law of John W. Wells, deceased, and filed the bill herein to have decree that defendant board furnish water for care of the lot from water mains adjacent to the lot upon payment of a reasonable rate.

In 1927 the trustees adopted rules and regulations, approved by city ordinance, providing rates for care of cemetery lots. The annual rate for care of plaintiffs' lot was $89.50. Plaintiffs declined to pay such rate and, desiring to give the lot personal care, applied to defendants to be supplied with water from the water system, adjacent to the lot. Defendants refused to supply water and appeal from a decree granting plaintiffs right to have water from the distributing system at proper times upon paying a reasonable charge therefor.

The purpose of refusing use of the water was to coerce plaintiffs into paying the rate for annual or perpetual care of the lot.

Defendants claim that the city owns and operates the cemetery in a proprietary and not a governmental capacity and, therefore, may adopt and enforce such reasonable rules as it may desire.

Plaintiffs concede that the city owns and operates the cemetery in a proprietary capacity but contend that, after lots are sold, the city may not adopt rules calculated to force owners, with existing rights of

personal care, into paying the annual or perpetual rates.

In an opinion the circuit judge stated:

"I think these plaintiffs have contractual rights here, and I think, as to them, it is unreasonable to tell them they must go without water as a penalty for their refusal to pay these prices (annual or perpetual rate), and in my judgment it is the right of these plaintiffs to care for their own lots by their own efforts, or through agents selected by them, under reasonable rules and regulations fixed by the trustees, and to have the water supply which the cemetery board can furnish at reasonable times and under reasonable regulations, and at a reasonable rate."

The perpetual care rate would require a large deposit in a trust fund. Defendants can supply the cemetery lot with water from the water system pipes now installed opposite the lot. Their refusal to do so is unreasonable and contrary to the just rights of the plaintiffs. Plaintiffs have an undoubted right to care for the lot in person or select others to do so for them, conforming, however, to reasonable rules and regulations of conduct. No rule or regulation can operate to take away such right; neither may the exercise of the right be frustrated in the manner here sought. This is not an instance of purchase, subject to such a rule or regulation, but one free therefrom at inception, and now sought to be engrafted upon and exercised to the deprivation of an existing right.

In *Wetherby* v. *City of Jackson*, 264 Mich. 146, we stated the rule applicable to the case at bar:

"Persons acquiring burial lots in cemeteries of the city of Jackson have a right personally to care for, beautify, adorn, and improve the same (*Chariton Cemetery Co.* v. *Chariton Granite Works*, 197

Iowa, 403 [197 N. W. 457, 32 A. L. R. 1402]), subject to reasonable rules and regulations that such improvements shall conform to the general plan for improving and beautifying the cemetery and the manner of doing the same. *Scott* v. *Lakewood Cemetery Ass'n,* 167 Minn. 223 (208 N. W. 811, 47 A. L. R. 64); *Ex parte Adlof,* 86 Tex. Cr. 13 (215 S. W. 222). These cases are based upon the theory that a cemetery is not only a place where the dead may be buried, but one in which the living may express their affection and respect of the dead by marking and decorating the place of interment and beautifying its surroundings. *Ex Parte Adlof, supra; Mansker* v. *Astoria,* 100 Ore. 435, 459 (198 Pac. 199, 199 Pac. 381). What the owner of the lot may do personally he may cause to be done by his agents or employes."

The board had a right to establish annual and perpetual care rates, leaving acceptance thereof optional, but not to exercise coercion by arbitrary refusal to otherwise supply water for caretaking purposes.

Defendants contend that no title or right could, or did pass by the deed from Brown to Wells, for Brown held no title in fee, but only a certificate of right of burial in the lot and such was not transferable, in whole or in part, and, therefore, plaintiffs inherited no rights from the grantee.

It is true Mr. Brown had no title in fee and could convey none. He had rights, however, and so far as he could do so conveyed such rights in a part of the lot to Mr. Wells. The form of the conveyance is of little moment.

The cemetery superintendent, as before stated, was not only cognizant of the transfer but aided in bringing it about and, at all times thereafter, there was user of the lot as of right by Mr. Wells. The records of the board of trustees showed the transfer

and, for upward of 20 years after such record existed, no one questioned the rights exercised by Mr. Wells under the transfer from Mr. Brown. The claim now made is not only stale but, by reason of long-time actual recognition of rights to the contrary, is no longer available. It is apparent that the transfer will still be recognized if plaintiffs will pay the annual or perpetual care rates. Defendants may not now question what they have, for upward of a quarter of a century, permitted.

*Requiescat in pace.*

The decree is affirmed, with costs to plaintiffs.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.