James V. BILLINGS, Appellant,

v.

R. N. PAINE, J. Layton Pickard and James F. Ford, Trustees Under the Will of Helen L. Wilson, Deceased, Respondents.

No. 46679.

Supreme Court of Missouri,

Division No. 2.

Jan. 12, 1959.

James V. Billings, Kennett, for appellant.

Ford & Ford, Elbert L. Ford, James F. Ford, Kennett, for respondents.

EAGER, Judge.

This suit is primarily one to try and and determine title to a cemetery lot in Dunklin County; in a separate count plaintiff sought an injunction against the maintenance of corner markers on the lot, and also damages. Defendants denied plaintiff's title and in a counterclaim sought a decree adjudging title to be in them; they allege that they hold title both by mesne conveyances and by adverse possession. Upon trial to the court both the

second amended petition and the counter-claim were dismissed for insufficiency of the evidence. Only the plaintiff has appealed. We shall refer to the parties as they appeared in the trial court.

On April 2, 1894, C. H. Mason filed for record an executed and acknowledged plat of "Oak Ridge Cemetery," consisting of eight acres of land as therein described; therein he assigned and conveyed the driveways, walks and avenues "for the use of the public." This plat showed the various lots and blocks by numbers, and also the drives and walkways in the cemetery; it was offered and received in evidence. As of the time of trial, the plat showed the name of "Fred Wilson" written across lots 1 and 2, Block 144; those are adjoining lots, 2 lying south of 1. The controversy here is over lot 2. On March 27, 1896, C. H. Mason conveyed the cemetery to George W. Huskey by warranty deed. Plaintiff offered and the court received in evidence, over objections, an instrument which is the basis of plaintiff's claim; it reads as follows: "Know all Men by these Presents, That for and in consideration of the sum of fifteen Dollars, to us paid by R. B. Shelton we have this day sold, transferred and conveyed to said R. B. Shelton Lot No. 2 in Block No. 144 in Oak Ridge Cemetery, in Dunklin County, Missouri. That this certificate is a receipt for money paid and obligates us to comply with the provisions, of Chapter 127, of the Revised Statutes of Missouri, 1889, and that this certificate obligates us to comply with Section 7317, of said Chapter. In Witness Whereof, We hereby obligate ourselves, our heirs, assigns, and executors, forever. This 20th day of June 1896 G. W. Huskey, Ruth Huskey." The argument is now made that the identity of that certificate was not sufficiently established, but the trial court thought that it was and we agree. It is wholly unnecessary to review that evidence. There was testimony showing that G. W. Huskey had sold lots in the cemetery. From the probate records plaintiff offered the record of various documents and proceedings culminating in the conveyance of this lot by the Administrator of R. B. Shelton to plaintiff, James V. Billings. We need not recite these in detail, for no attack is made on the validity of those proceedings; defendants did object to the Administrator's deed as not properly proved and as not connected with any chain of title. The deed was identified by the notary who took the acknowledgment, and the other objections go to its weight rather than to its admissibility. The deed of the Administrator was dated and acknowledged on May 13, 1942. The consideration was sixty dollars. It was stipulated that there are no graves on the controversial lot 2, and that after the death of Fred Wilson in July, 1951, stone markers (bearing the initial "W") were set at the south corners of lot 2. The petition alleges that this was done after January 1, 1954. It was further stipulated, as a part of defendants' case, that under Wilson's will his widow, Helen L., was vested with all of his title and interest in real estate, that she died on November 15, 1956, and by her will devised all of her title and interest in real estate to the defendants as trustees; that there are four graves on lot 1 and that the first of these was placed there at least as early as 1917. Defendant also re-introduced the cemetery plat. The foregoing constituted the evidence.

We have had some doubt of our jurisdiction in view of the authorities in Missouri and elsewhere which hold that a conveyance of a cemetery lot, though absolute in form, transfers merely an easement or privilege of burial, and that the fee title to the land remains in the grantor. Kansas City v. Scarritt, 169 Mo. 471, 69 S.W. 283; Wooldridge v. Smith, 243 Mo. 190, 147 S.W. 1019, 40 L.R.A.,N.S., 752; Mullins v. Mount St. Mary's Cemetery, 259 Mo. 142, 168 S.W. 685; Campbell v. City of Kansas, 102 Mo. 326, 13 S.W. 897, 10 L.R.A. 593; Jackson, The Law of Cadavers (1950), pp. 358–363; 14 C.J.S. Cemeteries § 24; Went v. Methodist

Protestant Church, 80 Hun. 266, 30 N.Y.S. 157; Robertson v. Mt. Olivet Cemetery Company, 116 Tenn. 221, 93 S.W. 574; 67 L.R.A. 118, note; Trefry v. Younger, 226 Mass. 5, 114 N.E. 1033. That status continues so long as the land is used as a cemetery; and the right of sale of the fee owner is restricted accordingly. United Cemeteries Co. v. Strother, 332 Mo. 971, 61 S.W.2d 907, 90 A.L.R. 438. The opinion in Wooldridge, supra, indicates that this right of interment is not strictly an easement. However, it is, in any event, an interest in real estate (Jackson, supra, p. 362). We have held that an action which directly determines a controversy involving the title to an easement, or seeks to establish an easement, or seeks to set aside an easement, is properly in this court. Gibson v. Sharp, 364 Mo. 1007, 270 S.W.2d 721; Missouri State Oil Co. v. Fuse, 360 Mo. 1022, 232 S.W.2d 501, 503; Robb v. N. W. Electric Power Co-operative, Mo., 297 S.W.2d 385; Peters v. Platte Pipe Line Co., Mo., 305 S.W.2d 413. On this theory we accept jurisdiction.

The plaintiff, in his brief, claims "title or Right of Easement" by reason of the certificate to Shelton and the Administrator's deed; therein he seems to recognize the nature of such a transfer. Defendants, as representatives of Helen L. Wilson, actually claim title (so far as we can tell) by reason of the endorsement of the name of Fred Wilson on the plat, and by adverse possession. On all phases of the case the evidence is incomplete and unsatisfactory. No one with personal knowledge of the material facts and circumstances testified on either side.

The plat in question was apparently filed pursuant to § 7317, R.S.Mo.1889, which is now § 214.040 RSMo 1949, V.A.M.S. (All statutory citations will refer to the latter revision unless otherwise designated.) That section was as follows: "Every per-son or association owning any cemetery or graveyard, not private, in which bodies are allowed to be buried, shall cause to be recorded in the proper office a plat of such cemetery or graveyard, showing its walks, ways, roads, avenues, and the number and sizes of the burial lots therein, and the names of their respective owners, so far as such cemetery has been laid out in lots and sold; and annually, on or about the first day of January, such person or association shall file for record—so as to continue from year to year the original plat until it shall show the whole tract subdivided into lots and the owners' names—a corrected plat showing new thoroughfares and places, if any have been laid out, and all lots, with the names of the owners and the size indicated on each lot, sold since the previous January first; and such corrected plat shall be recorded by correcting and continuing the original plat first recorded. (R.S.1879, § 6577.)" It will be noted that this section did not require the recording, as such, of the conveyance of a burial lot, nor did it provide for the form of conveyance. By way of analogy only, we note that since 1893 (§ 5851, R.S.Mo.1899)[1] cemetery lots owned by cities of the third class might be conveyed by certificates which should vest in the "purchaser, his or her heirs and assigns, a right in fee simple to such lot for the sole purpose of interment * * *." Similar statutes governed cities of the fourth class. Sections 5972 and 5973, enacted in 1895.[2] The general sections governing "Burial Grounds," applicable to all towns, cities and villages (§§ 942, 943, R.S. Mo.1889)[3] authorized the purchase and holding of land for cemeteries, and the conveyance of lots therein "by deed signed by the mayor * * * attested by the city clerk * * *," with the further provision that the deed should vest in "the purchaser, his or her heirs and assigns, a right in fee simple * * * for the sole purpose of interment * * *."

1. Now V.A.M.S. § 77.130.

2. V.A.M.S. §§ 79.430, 79.440.

3. V.A.M.S. § 12.010.

■ It seems clear that the conveyance or transfer of a cemetery lot in a public cemetery, as this undoubtedly was, does not constitute the conveyance of a fee simple absolute, and that the instrument need not, of necessity, comply with the formalities of a deed of real estate generally. Mullins v. Mount St. Mary's Cemetery Ass'n, 259 Mo. 142, 168 S.W. 685; and see the Missouri statutes cited, supra. While this is somewhat anomalous, it seems to be the general law. 14 C.J.S. Cemeteries § 24, p. 84; Robertson v. Mt. Olivet Cemetery Company, 116 Tenn. 221, 93 S.W. 574; Hughes v. Harden, 194 Okl. 307, 151 P.2d 425; Trefry v. Younger, 226 Mass. 5, 114 N.E. 1033; People ex rel. Coppers v. Trustees of St. Patrick's Cathedral, 21 Hun 184; Corkill v. Calvary Cemetery Ass'n, 15 Ohio Supp. 64. "Certificates" of sale and transfer have often been recognized; see the cases just cited, and also Monett Lodge No. 106, I.O.O.F. v. Hartman, 185 Mo.App. 148, 170 S.W. 670.

■ We have held that the certificate issued to Shelton was sufficiently identified; the probate proceedings in his estate fairly show his possession of the certificate at his death. We may presume a delivery to him from that possession. 17 C.J.S. Contracts § 581, p. 1220; Laughlin v. March, 19 Wash.2d 868, 145 P.2d 546; First Trust & Savings Bank of Kankakee v. Powers, 325 Ill.App. 600, 60 N.E.2d 582, 586; Dunn v. Heasley, 375 Ill. 43, 30 N.E. 628. We have not relied therein upon the deed cases for they involve, generally, deeds acknowledged under our statutes so that the acknowledgment itself is considered as aiding the presumption of delivery. Baker v. Baker, 363 Mo. 318, 251 S.W.2d 31, 37, 33 A.L.R.2d 1431. It thus appears that Shelton acquired a paper title. Defendants seem to insist that this title was lost because Shelton's name was not endorsed upon the plat of this lot as required by § 7317, R.S.Mo.1889. We construe the statute as placing that burden upon the owner of the cemetery. It seems apparent that an individual purchaser would not be permitted to alter the recorded plat, and we do not feel that he should be held liable for the default of the party expressly charged with that duty. By way of analogy see Sexton v. Dunklin County, 296 Mo. 682, 246 S.W. 195. We note again that no statute required Shelton's certificate to be recorded, and also that the authorities recognize and enforce transfers of this character without all the formal requisites of conveyances of land generally (as in § 442.020).

It remains to be determined whether or not Shelton, or his estate, might alienate or transfer his rights in this lot. It is highly material that there had been no interment on the lot. Jackson, supra (who is apparently the principal text writer on the law of cemeteries, despite the somewhat peculiar title "Cadavers"), indicates that in the absence of specific restrictions by regulation or statute, the rights should be subject to transfer before any interment has been made on the lot. Manifestly, a change of circumstances might make it wholly useless for a person or a family to retain an unused burial lot. Jackson, supra, at loc. cit. 364, says: "* * * Where, however, one purchases the burial rights in a subdivision of a cemetery, there exists a privilege or easement which by its very nature constitutes property, and which under ordinary circumstances should be and is the subject of transfer. Good reason may exist for disposing of a burial lot before any interment has been made therein. Thus change of circumstances or removal to a distant place might dictate a change of burial place.

■ "So long as a burial right is conveyed without injury to the remaining lot owners—i. e., not in violation of restrictions properly laid thereon in the form of regulations by the cemetery association —and so long as such conveyance violates no statutory policy of preserving to the lot owner or his next of kin a right of burial, there should be no valid objection

to transfer of a burial right before the right has been exercised." And see Wells v. Daniell, 266 Mich. 250, 253 N.W. 285. Perhaps the cemetery could control such transfers, but it has not done so here. Certain of the Missouri statutes in effect at the time of the original conveyance and already cited (§ 5851, R.S.Mo.1899, § 943, R.S.Mo.1889) provided that the certificate mentioned should vest a right of interment in the "purchaser, his or her heirs and assigns." Thus, the statutes do not seem to establish a policy against transfer, but rather the contrary. In the case of Daniell v. Hopkins, 257 N.Y. 112, 118–119, 177 N.E. 390, 76 A.L.R. 1367, the applicable statute authorized alienations before interment, with the consent of the cemetery. The contention was made that an unused and unneeded cemetery lot, of very substantial value, could not be sold by the executor for the payment of debts. The court said, in part, 257 N.Y. loc. cit. 118–119, 177 N.E. loc. cit. 392: "If we part from the letter of the law and apply the rule of reason to the interpretation of statutes and regulations under which a burial lot is held in this state, it clearly appears that the court should enforce such statutes and regulations liberally in order to protect the cemetery and to prevent indecent strife over the ground in which interments of dead bodies have been made but that no such sanctity attaches to a burial lot in which no interments have been made. It is the first burial that consecrates the ground. Love v. Robinson, 219 Pa. 469, 475, 476, 68 A. 1033. * * * Admittedly a man might desire to change his lot for one more eligible. A woman might desire to be laid at rest beside her second husband rather than her first. We do not deny the abstract right to acquire a second burial lot. A reasonable latitude must be allowed to protect the legitimate desires of the deceased as viewed in the light of all her surroundings. But at all times the executors might prefer to sell the lot selected before a burial thereon and buy one more in keeping with the condition of the estate. Nothing in the statutes or rules would seem to prevent. Surrogate's Court Act, § 216, § 234, subd. 2; § 314, subd. 3." In Derby v. Derby, 4 R.I. 414, loc. cit. 434, it was held that an executor might not sell, under a general power of sale for the payment of debts and legacies, a burial lot in which the decedent's first wife was buried, but that it would descend to the heir at law. That, as stated, is a wholly different question. We are of the opinion that Shelton's rights in the lot might be sold under proper procedure; those proceedings have not been attacked here.

■ Although defendants alleged that they held title both by mesne conveyances and adverse possession, we need discuss only the latter. They have shown no conveyance whatever; the wholly unexplained endorsement of "Fred Wilson" on the plat of both lots does not, in itself, constitute or prove a conveyance. We need not determine whether a second conveyance of the lot would have been of any effect.

■ While adverse possession does not generally run against the public or against lands appropriated to "pious or charitable use" (§ 516.090; Tracy v. Bittle, 213 Mo. 302, 112 S.W. 45), this rule is not applicable to controversies over the title to (or, more specifically, the rights to burial in) an individual lot; that is a matter of private right, not public. And the easement or right of burial in a specific lot may, under proper circumstances, be acquired by adverse possession or prescription. Jackson, The Law of Cadavers, p. 231–233; 1 Am.Jur. Adverse Possession, § 131, note 11, and cases cited; Sherrard v. Henry, 88 W.Va. 315, 106 S.E. 705, 21 A.L.R. 645; Corkill v. Calvary Cemetery Ass'n, 15 Ohio Supp. 64; Hughes v. Harden, 194 Okl. 307, 151 P.2d 425; Hook v. Joyce, 94 Ky. 450, 22 S.W. 651, 21 L.R.A. 96; Mooney v. Cooledge, 30 Ark. 640; and see, generally, 40 L.R.A. 752, note. A distinction is generally recognized between such a claim of title as against the cemetery itself (a public and charitable

use) and a claim against a private interest in a specific lot or lots. Troost Avenue Cemetery Co. v. Kansas City, 348 Mo. 561, 154 S.W.2d 90; Mount v. Yount, 220 Mo. App. 187, 281 S.W. 119. The Hook case, supra, was criticized in Wooldridge v. Smith, 243 Mo. 190, 147 S.W. 1019, 1022–1023, 40 L.R.A.,N.S., 752, but apparently for the reason that the plot of ground in question was not an established cemetery, either public or private, at the beginning of the prescriptive period. Our question seems to have been left open. We hold that as between opposing private claims to the proprietary rights and interests in a burial lot in an established public cemetery, there having been no interment on the lot, adverse possession (or prescription) may run. The showing made here by defendants is insufficient to establish such title. The facts, circumstances, nature and dates of Wilson's supposed entry, possession and claim of title were in nowise shown; there was only a stipulation as to the placing of two corner markers on the lot at a wholly unspecified date. There was not even any evidence of the care of the lot, or the payment of expenses. There seems almost to have been an avoidance of the real facts on both sides.

In a suit to try and determine title the court should ordinarily adjudicate title affirmatively as between the parties. Pettus v. City of St. Louis, 362 Mo. 603, 242 S.W.2d 723; Evans v. Brussel, Mo., 300 S.W.2d 442; White v. Kentling, 345 Mo. 526, 134 S.W.2d 39. Here, it dismissed both claims. One party or the other is entitled to an adjudication establishing, as between them, the better title; but we shall remand the case in order that the parties may better develop the evidence upon another trial. Similar remands have been made heretofore, upon occasion. Wright v. Brown, Mo., 177 S.W. 2d 506; White v. Kentling, 345 Mo. 526, 134 S.W.2d 39. In view of our conclusions, we need not discuss the claimed right to an injunction.

The respondent filed a motion to dismiss this appeal for alleged failures of appellant to comply with Rule 1.08, 42 V.A. M.S., in the preparation of his brief. We have considered this, and, while the form of the brief leaves much to be desired, the motion is overruled. The judgment is reversed and the cause remanded.

All concur.