Firmin H. **HUTCHINGS** and Shirley A. Hutchings, on behalf of themselves and all of the purchasers of a Family Security Plan from Valhalla Cemetery, Crematory and Mausoleum Company, a corporation, formerly National Cemetery Association of Missouri, formerly St. Louis Crematory & Mausoleum Company, Plaintiffs-Appellants,

v.

**VALHALLA CEMETERY**, Crematory and Mausoleum Company, a Corporation, formerly National Cemetery Association of Missouri, formerly St. Louis Crematory & Mausoleum Company, Defendant-Respondent.

No. 43082.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 14, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 21, 1981.

Application to Transfer Denied
Nov. 10, 1981.

---

Jerry A. Klein, Clayton, for plaintiffs-appellants.

Robert C. Jones, Clayton, for defendant-respondent.

SMITH, Judge.

Plaintiffs appeal from the order of the trial court granting defendant's motion for summary judgment as to Counts I and II of plaintiff's petition and granting defendant's motion to dismiss Count III.

All three counts were based upon an agreement between the parties referred to as a "Family Security Plan Agreement." Plaintiffs alleged in Count I that the Agreement was subject to Chapter 436, RSMo 1978, and that defendant had violated the provisions of that Chapter in four specified ways. Count II alleged that in selling the prearranged burial plans, as defined in Section 436.010 defendant used unlawful merchandising practices contrary to Sec. 407.020, RSMo 1978, by misrepresenting the plans and by failing to do certain things required by Chapter 436. Count III realleged all allegations of the first two counts and then alleged in general terms that defendant's "acts, representations, concealments, omissions, and suppressions" were fraudulent. Plaintiffs sought damages, both actual and punitive, for themselves and all members of the class which they purported to represent.[1]

The Family Security Plan Agreement provided for the purchase by plaintiffs of a garden crypt to be erected on defendant's cemetery property. The purchase price was $2,895 minus a $400 pre-completion discount, to be paid by 100 equal monthly payments. The crypt was to contain specified lettering. Title to the crypt was to be transferred upon payment in full. By separate documents defendant agreed to cancel the unpaid balance and issue a certificate of ownership if the purchaser, Firmin Hutchings, died within 100 months of the date of the agreement, and also agreed to provide at no charge additional spaces for interment of any of plaintiff's children who died before age 18 or at half charge for any child dying between 18 and 21.

The trial court found that Chapter 436 did not apply to the Agreement, and that plaintiffs' cause of action under that statute is barred by the statute of limitations. It further found that both Counts II and III rested upon the applicability of Chapter 436 and so failed with Count I, and that additionally Sec. 407.025 does not apply to sale of a crypt because a crypt is real estate and

1. The court made no determination of the validity of plaintiff's class allegations. No question is raised on this appeal concerning the class allegations.

not goods or services. We deal first with the applicability of Chapter 436 and specifically of Sec. 436.010 which sets forth the contracts to which the chapter applies. The portion of that section with which we are concerned is as follows:

## "PREARRANGED FUNERAL AGREEMENTS

436.010. Prearranged funeral agreements void if not in accordance with law—funeral merchandise defined—purchaser may recover.—*Any* agreement, contract or *plan requiring the payment of money by a purchaser* in a lump sum or in installments, *which is made* or entered into *with any* person, association, partnership, firm or *corporation who, in consideration thereof, agrees to provide for the final disposition of a dead human body,* or for funeral or burial services, or for services to be rendered in negotiating such arrangements or providing for discounts with respect thereto, or for the furnishing of personal property or funeral or burial merchandise, *wherein the delivery of the* personal property or the *funeral or burial merchandise and services in connection with the negotiation of such arrangements,* allowance of discounts, or the furnishing of professional services by a funeral director or embalmer, *is not immediately required, is hereby declared against public policy and void, unless all money paid thereunder is handled in accordance with the provisions of sections 436.010 to 436.080, and subject to the terms of a written agreement* not in conflict herewith. *'Funeral merchandise' as used herein shall include* caskets, grave vaults, and *all other articles of merchandise incidental to a funeral service, but excluding* grave lots, grave spaces, grave markers, monuments, tombstones, crypts, niches and mausoleums; provided, however that grave lots, grave spaces, grave markers, monuments, tombstones, *crypts, niches and mausoleums shall be considered to be funeral merchandise when these items* and articles *are sold by a companion agreement or are sold in contemplation of trade or barter for services and articles included within the provisions of sections 436.010 to 436.080 or at excessive prices intended to be offset by reductions in the cost of services and articles to which sections 436.010 to 436.080 apply . . . ." (Emphasis supplied).*

As is apparent the section suffers from the not uncommon statutory malady of including within one or two complex sentences a number of related vices to be controlled, with exceptions or alternatives applicable to some but not all of their number. We have, therefore, underlined the portions of the statute which have applicability to the plan before us. The function of a court in interpreting a statute is to determine the intent of the legislative body and to give meaning to that intent, if possible. *Schimmer v. H. W. Freeman Const. Co.,* 607 S.W.2d 767 (Mo.App.1980) [2, 3]. The key wording of the first sentence of this section is "wherein the delivery of the . . . funeral or burial merchandise . . . is not immediately required, . . . ." That language makes it apparent that the section is designed to reach what is generally referred to as prearranged or pre-planned funeral agreements, i. e., those entered into prior to the death of the person for which they are intended. The earlier parts of that sentence delineate the many and varied devices by which such prearranged funeral agreements may be established. The delivery provision tracks these various devices and makes them void unless in compliance with the Chapter. It is therefore necessary to determine whether the Agreement called for delivery of "funeral or burial merchandise." [2]

---

2. In limiting our inquiry to "funeral and burial merchandise" we have determined that the agreement before us does not require delivery of personal property, services in connection with negotiation of arrangements for funeral or burial services, services in arranging for discounts, or furnishing services by a funeral director or embalmer. Here the cost of the crypt was discounted, but the contract did not provide for defendant to provide services to obtain that discount.

We turn to the second sentence of Sec. 436.010, which defines "funeral merchandise."[3] That sentence specifically excludes crypts and similar final resting places from the definition of funeral merchandise except where the purchase of the final resting place is tied in to the supplying of other funeral merchandise or services. This exception was obviously intended to serve two functions—one, to prevent avoidance of the law through the subterfuge of selling a final resting place at an excessive price intended to cover in addition statutorily delineated funeral and burial merchandise and services and two, to include such items when they are an integral part of a single transaction to cover all or most of the funeral and burial needs at the time of death. The General Assembly obviously recognized the difficulties in voiding part but not all of a "package deal." The contract before us does not provide for the furnishing of "funeral merchandise" as that term is used in the statute. It provides only for the sale of a lettered crypt and for no other funeral or burial services. The additional agreement to provide interment space for children also was limited to that space and did not provide for any other type of service. We do not find Chapter 436 applicable to this agreement.

This conclusion is bolstered by examination of the remainder of the Chapter. Much of the Chapter deals with requirements for the safeguarding of the money paid for prearranged funerals so that when the service is required the money paid for the service will be available if the original seller of the service is unable or unwilling to perform the service contracted for. The same dangers are not present in the purchase of a last resting place for the item purchased has a fixed location in an established cemetery or mausoleum normally subject to the provisions of Sec. 214.270, RSMo 1978. In addition, the purchase of a last resting place is complete upon payment of the purchase price. The purchaser at that time obtains ownership of what he purchased and the seller has no subsequent performance to make in regard to that sale. The purchaser acquires an interest which under ordinary circumstances is subject to transfer. *Billings v. Paine*, 319 S.W.2d 653 (Mo.1959) [8–10]. On the other hand Sec. 436.040(3) recognizes that a contract for funeral and burial service does not mature until the death of the person for whom the service is purchased. The need, therefore, to protect the purchaser to insure that he receives the services for which he paid is much greater than is true in the purchase of a burial place. Our examination of the statutory scheme convinces us that the agreement before us was not subject to the provisions of Chapter 436 and the trial court was correct in granting defendant's motion for summary judgment on Count I. It is unnecessary for us to rule on the alternative ground involving the statute of limitations.

Count II was based upon violations of the Merchandising Practices Act, Sections 407.010–407.130, RSMo 1978. That count sought recovery entirely upon the basis that defendant had violated Chapter 436 and therefore had engaged in unlawful merchandising practices. Our holding on the inapplicability of Chapter 436 is also a sufficient basis for upholding the trial court's action in granting a summary judgment on Count II. Additionally, the private cause of action provisions of Sec. 407.025 limits such actions to purchases or leases of "goods or services." *Schimmer v. H. W. Freeman Const. Co., supra*, [4]. The exact nature of the ownership of a burial space is not clearly defined. It appears to have been treated in Missouri as the purchase of an easement or privilege or license of exclusive use for burial purposes. *Billings v. Paine, supra; Wooldridge v. Smith*, 243 Mo. 190, 147 S.W. 1019 (1912) [3]. A

---

**3.** We must assume that "funeral merchandise" as defined includes "burial" merchandise also. Because the two terms are used together it is unreasonable to conclude that the exclusion of graves etc. from funeral merchandise could be defeated by including them in a general definition of "burial merchandise." Such an interpretation would render meaningless the exclusion.

crypt is of the same nature. *Mount v. Yount*, 220 Mo.App. 187, 281 S.W. 119 (1926). We need not define precisely what the nature of a burial space is; we have confidence that it is not "goods or services." The trial court did not err in granting a summary judgment on Count II.

The only allegations of fact in Count III are the alleged violations of the statutes set forth in Counts I and II. No independent ground for relief is advanced other than those alleged statutory violations. Inasmuch as we have found no actionable statutory violations, Count III has no factual base upon which to stand. The trial court correctly dismissed it.

Judgment affirmed.

SATZ, P.J., and SIMON, J., concur.