# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP1765 |
| COMPLETE TITLE: | Petition for Order Regarding Williams/Jones Pioneer Cemetery: |

Melvin DeWitt, Donna DeWitt, Darrell Parker, Ruth Parker, Merlin Williams, Wanda Williams and Phyllis McCoy,
      Petitioners-Respondents-Petitioners,
    v.
Earl G. Ferries and Paulette M. Ferries,
      Respondents-Co-Appellants,
Town of Forest,
      Appellant.

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 378 Wis. 2d 741, 905 N.W.2d 844
(2017 – unpublished)

| | |
|---|---|
| OPINION FILED: | December 27, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 25, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Vernon |
| JUDGE: | Michael J. Rosborough |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the petitioners-respondents-petitioners, there were briefs filed by *Thomas W. Harnisch* and *Thomas W. Harnisch Law Office*, Neillsville. There was an oral argument by *Thomas W. Harnisch.*

For the appellant, there was a brief filed by *Joseph P. Humphrey* and *Geier Homar & Roy*, *LLP*, Madison. There was an oral argument by *Joseph P. Humphrey.*

For the respondents-co-appellants, there was a brief filed by *W. Garth Hitselberger* and *Hitselberger Law Office*, *LLC*, Hillsboro. There was an oral argument by *W. Garth Hitselberger*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP1765
(L.C. No. 2014CV48)

STATE OF WISCONSIN       :      IN SUPREME COURT

**Petition for Order Regarding Williams/Jones Pioneer Cemetery:**


**Melvin DeWitt, Donna DeWitt, Darrell Parker, Ruth Parker, Merlin Williams, Wanda Williams and Phyllis McCoy,**

       **Petitioners-Respondents-Petitioners,**

  **v.**

**Earl G. Ferries and Paulette M. Ferries,**

       **Respondents-Co-Appellants,**

**Town of Forest,**

       **Appellant.**

**FILED**

**DEC 27, 2018**

Sheila T. Reiff
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*


¶1 ANN WALSH BRADLEY, J. The Petitioners, collectively the DeWitts, seek to transfer a one-acre parcel of property to

the Town of Forest.[1] They assert that the parcel is a cemetery where they believe their relatives are buried and that the parcel is neglected or abandoned. The circuit court agreed and issued an order transferring the one-acre parcel to the Town to manage as a town cemetery, pursuant to Wis. Stat. § 157.115(1)(c) (2015-16).[2]

¶2 The court of appeals, however, disagreed. It determined that the DeWitts failed to prove a statutory requirement——that "there exists no association or group with authority to transfer ownership and operation of the

---

[1] The Petitioners are Melvin DeWitt, Donna DeWitt, Darrell Parker, Ruth Parker, Merlin Williams, Wanda Williams and Phyllis McCoy.

[2] Wisconsin Stat. § 157.115(1)(c) provides:

Whenever any cemetery in a town is falling into disuse, or is abandoned or neglected, and by reason of the removal or death of the persons interested in its upkeep there exists no association or group with authority to transfer ownership and operation of the cemetery to the town, the town board, at the expense of the town, shall take charge of the cemetery and manage and care for it, and if the town board fails to take charge of the cemetery, the circuit judge may upon petition by 6 or more persons interested in the upkeep of the cemetery order its transfer to the town, including the transfer of all assets. Cemeteries so transferred shall be managed as provided for other town cemeteries.

All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

cemetery . . . ."[3]  Finding this failure dispositive, the court of appeals reversed the circuit court's order transferring the parcel to the Town.

¶3   The DeWitts now seek review of the unpublished per curiam decision of the court of appeals.  They contend that the court of appeals erred because the evidence they presented supports the circuit court's conclusion that the parcel meets the statutory requirements for the transfer of a cemetery to the Town.  The DeWitts further advance that even if the requirements of chapter 157 are not met, the one-acre parcel is nevertheless a cemetery.  They point to various late-nineteenth-century conveyances referring to a "cemetery" on the parcel in support of their arguments.

¶4   We conclude that the DeWitts failed to prove that this parcel is a cemetery.  Therefore, the parcel is not subject to the transfer mechanism set forth in Wis. Stat. § 157.115(1)(c), which applies only to cemeteries.  Because we determine that this parcel is not a cemetery, we need not address whether the other requirements set forth in the cemetery transfer statute are satisfied here.  Accordingly, we affirm the court of appeals.

---

[3] _DeWitt v. Ferries_, No. 2016AP1765, unpublished slip op., ¶1 (Wis. Ct. App. Oct. 26, 2017) (reversing order of circuit court for Vernon County, Michael J. Rosborough, Judge).

I

¶5 At issue is a one-acre parcel of land located on or adjacent to a 204-acre farm owned by Earl and Paulette Ferries (the Ferries).[4] Earl was born on the farm in 1939, and has lived there his entire life. The farm has been owned by the Ferries family for over a century.

¶6 Located on a hill, the parcel abuts Wildcat Mountain State Park and is separated from the park by a fence. There are no public roads leading to or passing it. The parcel is accessible either by crossing land owned by the Ferries or through the state park.

¶7 The DeWitts testified that some of their ancestors were buried there. There are no headstones or grave markers anywhere on the parcel. The circuit court found that "the [DeWitts] believe that 25-30 bodies were interred" in the parcel prior to 1918.

¶8 Over the years, the Ferries allowed individuals who believed their ancestors were buried in the parcel to access it by walking across the Ferries' property, which is a trek of about one mile. The Ferries also fenced off approximately one-quarter of an acre of the parcel following older fence wires that had become intertwined with trees. Paulette Ferries

---

[4] We observe that the Ferries have asserted an adverse possession claim over the parcel, but that no action to quiet title appears to have been filed to date. We do not address the merits of the Ferries' adverse possession claim, nor do we make any other determinations about the ownership of this parcel.

testified that they did so out of respect for those who believed their relatives were buried in the parcel and to avoid growing crops or grazing cattle within the fenced area. However, Paulette Ferries testified that she never observed any grave markers on the parcel during her approximately 50 years of familiarity with the property and that she does not believe the rumors that any bodies were in fact buried on the parcel.

¶9 Several nineteenth-century references to a "cemetery" appear in the parcel's chain of title. Initially, in 1872 the United States transferred to Isaac M. Jones 40 acres of land, including the parcel at issue.

¶10 In 1892 Jones and his wife conveyed to Samuel Boyer the same "40 acres more or less. Excepting one acre now used as [a] cemetery on the north side of the above described tract of land being a part of the same."[5] No specific boundary or legal description was provided in the Jones-Boyer deed for the one acre designated as a "cemetery."

¶11 The 40 acres were conveyed three more times between 1892 and 1896, with similar exceptions for "one acre now used as [a] cemetery."[6] However, a conveyance from 1898 in the chain of

---

[5] The Jones-Boyer deed was dated July 15, 1892, and recorded on July 18, 1892.

[6] The additional deeds conveying the 40-acre parcel with an exception for "one acre now used as [a] cemetery" consisted of the following:

(continued)

5

title apparently conveyed 100 acres, including the purported 40 acres, without reference to an exception for a cemetery.[7] The Ferries farm now includes those 100 acres, with the possible exception of the one-acre parcel at issue here.

¶12 In 1898 Jones and his wife conveyed the one-acre parcel to five individuals: G.M. Carson, J.C. Williams, Wm. Downing, David Jones and Edward Carson (the Carsons). Following a legal description of the one-acre parcel,[8] the 1898 Jones-

---

- Boyer-Jones deed (dated July 19, 1892, and recorded on July 25, 1892): Samuel and Eva Boyer conveyed to Emma Jones "forty acres more or less. Excepting one acre now used as [a] cemetery."

- Jones-Parker deed (dated Sept. 21, 1894, and recorded on July 10, 1895): Isaac and Emma Jones conveyed to John Parker a larger tract of 100 acres, "except one acre now used for a Cemetery on the above premises." Those 100 acres included the "forty acres more or less" described in the Boyer-Jones deed of 1892.

- Parker-William Ferries deed (dated Jan. 17, 1896, and recorded on Jan. 18, 1896): John and Mary Parker conveyed to William H. Ferries the same 100 acres, except for "one acre now used as [a] cemetery on said premises."

[7] W.H. and Katie J. Ferries conveyed to E.H. Ferries "one hundred acres more or less," without reference to an exception for a "cemetery." This conveyance was dated August 3, 1898, and recorded on August 4, 1898.

[8] The Ferries assert that "[t]he location of the [p]arcel is ambiguous on the face of the first four conveyances to mention [a] 'cemetery.' The description is uncertain and insufficient without extrinsic evidence."

(continued)

6

Carsons warranty deed contains the following language: "said land to be used for a cemetery and burial and no other purpose."[9] It appears that no subsequent conveyance of the specific one-acre parcel or reference to a "cemetery" appears in the parcel's chain of title after the 1898 Jones-Carsons deed.

¶13 The DeWitts recorded a "Notice" to register the name of the parcel as the "Williams/Jones Pioneer Cemetery" with the Vernon County Register of Deeds in November 2008.[10] A few months later, the Ferries filed an affidavit "for the purpose of clearing the record title" apparently in an attempt to acquire the parcel by adverse possession. In a letter to the Vernon County Register of Deeds dated July 21, 2009, the State Historical Society advised that the "Williams-Jones Pioneer Cemetery" had been cataloged as a "burial site," pursuant to Wis. Stat. § 157.70(2)(a) (Wisconsin's Burial Sites Preservation

---

We assume without deciding that the references to an exception for a "cemetery" in the 1892-1896 conveyances match the legal description of the one-acre parcel as described in the 1898 Jones-Carsons conveyance. Additionally, we assume without deciding that the 1898 Jones-Carsons warranty deed did in fact convey the parcel at issue here.

[9] The warranty deed granting the one-acre parcel from Isaac M. Jones and his wife Emma Jones to G.W. Carson, J.C. Williams, Wm. Downing, David Jones and Edward Carson was dated April 20, 1898, and recorded on October 7, 1898.

[10] According to the Ferries, the DeWitts invented the name "Williams/Jones Pioneer Cemetery" in 2008 and that name did not exist before this controversy. There is nothing in the record to substantiate this name with any historical reference prior to 2008.

law). The letter further informed the Register of certain applicable laws and regulations related to burial sites.

¶14 In March 2014 the DeWitts petitioned the circuit court, requesting that it "order the transfer" of the parcel "including the transfer of all other related [c]emetery [a]ssets" to the Town pursuant to Wis. Stat. § 157.115(1)(c). The DeWitts asserted in their petition that the parcel is a "cemetery" that is neglected or abandoned. They requested that the circuit court order the transfer of the parcel to the Town so that it can be managed, possessed and controlled at the expense of the Town as provided for other town cemeteries.

¶15 Without holding an evidentiary hearing or receiving additional information on the matter, the circuit court granted the DeWitts' petition. In an order filed on April 8, 2014, it ordered that the parcel be "transferred with its Assets, if any, to the Town" and that the Town "immediately take the management, control and possession of this neglected and abandoned [c]emetery."

¶16 The Ferries moved the circuit court to reopen the proceedings, asserting that the DeWitts provided insufficient notice to the affected persons. They further argued that the DeWitts' submissions failed to establish the statutory requirements set forth in Wis. Stat. § 157.115(1)(c).

¶17 The circuit court orally denied the Ferries' motion to reopen, explaining that "the petition was in proper form [and] complied with the statute." It stated that it had not "transfer[red] by order anybody's property to anybody else," but

rather entered an order "turning [the parcel] over to the township. And what the town then does is up to the town."

¶18 Meanwhile, the Town did not perform maintenance or take any other action on the parcel in response to the circuit court's April 2014 order. According to the Town, it did not act due to uncertainty with regard to ownership and possession of the parcel. The Town explains that it attempted, to no avail, to secure a guarantee from title insurers that the circuit court had transferred title to the parcel to the Town.

¶19 In February 2016, the DeWitts filed a petition for a writ of mandamus, seeking to require the Town to comply with the circuit court's April 2014 order. Specifically, the DeWitts petitioned the circuit court to order the Town to "provide proper, timely, and permanent care and maintenance" of the parcel as a town cemetery. The Town moved to quash the writ, arguing that no final order had been entered in this underlying case. The Ferries intervened.

¶20 The circuit court orally denied the Town's motion to quash the writ. It then conducted an evidentiary hearing on the merits of the DeWitts' writ petition as well as the merits of the underlying April 2014 transfer order, over objections by the Town and the Ferries. Following the evidentiary hearing, the circuit court ordered briefing on the merits of the petition for

a writ of mandamus and on whether the transfer order issued two years earlier should be confirmed.[11]

¶21 In a final order, the circuit court confirmed the transfer of the parcel to the Town pursuant to Wis. Stat. § 157.115(1)(c), but denied the DeWitts' petition for a writ of mandamus.  It concluded that the parcel falls within the definition of a cemetery as set forth in Wis. Stat. § 157.061(1p).  In reaching that conclusion, the circuit court limited its explanation to the following:  "The conveyance of 1892 expressly states 'Excepting one acre now used as [a] cemetery.'"  The circuit court further determined that all other statutory requirements for a court-ordered transfer of the parcel pursuant to Wis. Stat. § 157.115(1)(c) were satisfied.  However, it denied the DeWitts' writ petition, explaining that it could not force the Town to act to maintain the cemetery.

¶22 The Ferries and the Town appealed the part of the circuit court's order confirming the April 2014 transfer of the parcel to the Town.  The DeWitts did not appeal the denial of the petition for a writ of mandamus.

¶23 In an unpublished per curiam opinion, the court of appeals reversed the decision of the circuit court. DeWitt v. Ferries, No. 2016AP1765, unpublished slip op., ¶17 (Wis. Ct. App. Oct. 26, 2017).  The court of appeals assumed without

---

[11] The circuit court explained:  "I am, in due course, going to issue a written decision covering both of these cases, that hopefully will give [] whoever wants to appeal, an appealable order . . . ."

10

deciding that the parcel at issue is a cemetery subject to the transfer mechanism of Wis. Stat. § 157.115(1)(c). DeWitt, No. 2016AP1765, unpublished slip op., ¶9 n.3. However, it determined that the DeWitts failed to prove, and the circuit court failed to make conclusions necessary to satisfy, the statutory requirement that "there exists no association or group with authority to transfer ownership and operation of the cemetery to the town." DeWitt, No. 2016AP1765, unpublished slip op., ¶1. Accordingly, the court of appeals concluded that the circuit court erred in granting the DeWitts' petition to transfer the parcel to the Town pursuant to Wis. Stat. § 157.115(1)(c). DeWitt, No. 2016AP1765, unpublished slip op., ¶16.

¶24 The DeWitts petitioned this court for review.

II

¶25 We are asked to determine whether the one-acre parcel of land is subject to the cemetery transfer mechanism set forth in Wis. Stat. § 157.115(1)(c). To determine whether the § 157.115(1)(c) cemetery transfer mechanism is applicable here, we interpret the term "cemetery." Statutory interpretation presents a question of law that this court reviews independently of the determinations rendered by the circuit court and court of appeals. Metropolitan Assocs. v. City of Milwaukee, 2018 WI 4, ¶24, 379 Wis. 2d 141, 905 N.W.2d 784 (citations omitted).

¶26 Statutory interpretation "begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." State ex rel. Kalal v. Circuit

11

Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. (citations omitted). "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes . . . ." Id., ¶46 (citations omitted).

¶27 The application of Wis. Stat. § 157.115(1)(c) to the facts of this case similarly presents a question of law that this court reviews independently, without deference to the circuit court or the court of appeals. Waller v. American Transmission Co., LLC, 2013 WI 77, ¶52, 350 Wis. 2d 242, 833 N.W.2d 764.

III

¶28 Assessing whether this one-acre parcel of land is subject to the cemetery transfer mechanism set forth in Wis. Stat. § 157.115(1)(c) requires us to determine as a threshold matter whether the parcel is indeed a cemetery. Thus we begin by setting forth the cemetery transfer statute and then examine whether the parcel at issue satisfies the statutory definition of a "cemetery."

¶29 The plain language of Wis. Stat. § 157.115(1)(c) indicates that this transfer statute applies only to cemeteries. It provides:

> Whenever any <u>cemetery</u> in a town is falling into disuse, or is abandoned or neglected, and by reason of the removal or death of the persons interested in its upkeep there exists no association or group with authority to transfer ownership and operation of the <u>cemetery</u> to the town, the town board, at the expense of the town, shall take charge of the <u>cemetery</u> and manage and care for it, and if the town board fails to take charge of the <u>cemetery</u>, the circuit judge may upon petition by 6 or more persons interested in the upkeep of the <u>cemetery</u> order its transfer to the town, including the transfer of all assets. <u>Cemeteries</u> so transferred shall be managed as provided for other town <u>cemeteries</u>.

Wis. Stat. § 157.115(1)(c) (emphasis added).  If this parcel is not a "cemetery," then the transfer mechanism set forth in § 157.115(1)(c) cannot be invoked.

¶30  Prior to July 1, 2016, the Wisconsin statutes did not provide a definition for a "cemetery."  2015 Wis. Act 237, §§ 6, 128.  Section 157.061(1p) now defines a "cemetery" as:  "any land, including any mausoleum on the land, that is used or intended to be used, exclusively for the burial of human remains."[12]

¶31 To aid in our interpretation of what constitutes a cemetery for purposes of the cemetery transfer statute, we look

---

[12] "Burial" is defined as "entombment, inurnment or interment."  Wis. Stat. § 157.061(1).  "Human remains" are defined as "the body of a deceased individual that is in any stage of decomposition or has been cremated."  § 157.061(8).  Thus, § 157.061(1p) read in conjunction with § 157.061(1) and (8) establishes that a cemetery is defined as any land, including any mausoleum on the land, that is used or intended to be used exclusively for entombment, inurnment or interment of the body of a deceased individual that is in any stage of decomposition or has been cremated.

13

to the language of surrounding and closely related statutes. Kalal, 271 Wis. 2d 633, ¶46 ("[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes . . . .") (citations omitted). A detailed statutory and regulatory scheme governs the formation and administration of cemeteries. See Wis. Stat. §§ 157.061-.65; Wis. Admin. Code CB §§ 1-6.

¶32 For example, Wis. Stat. § 157.065(1) details what entities can organize a cemetery and provides for the recognition of land that was used as a cemetery prior to 1864. It provides:

> No cemetery may be used for burials except any of the following:
>> (a) A cemetery in use on April 4, 1864.
>> (b) A cemetery organized and operated by any of the following:
>>> 1. A municipality.
>>> 2. A religious association.
>>> 3. A fraternal or benevolent society.
>>> 4. An incorporated college of a religious order.
>>> 5. A cemetery association created under s. 157.062.
>>> 6. A corporation organized under ch. 180 or 181.
>>> 7. A limited liability company organized under ch. 183.

¶33 Circumscribed by the above formation alternatives, a cemetery may not be used for future burials unless it was in use on April 4, 1864, or if it is organized and operated by one of the cemetery authorities enumerated in Wis. Stat.

14

§ 157.065(1)(b).[13]  § 157.065(1).  The existing facts of record do not satisfy the requirements set forth in § 157.065(1).

¶34 First, the United States initially transferred the parcel in 1872, without reference to a "cemetery."  The earliest reference to a "cemetery" located on the parcel did not appear in a deed until 1892.  Accordingly, there is no evidence of record that the parcel contained a cemetery "in use on April 4, 1864."  Wis. Stat. § 157.065(1)(a).

¶35 Second, there are no existing facts of record indicating that the parcel has been organized or operated as a cemetery by a cemetery authority.  Wis. Stat. § 157.065(1)(b).  The DeWitts do not contend that any entity has or intends to "organize or operate" the parcel as a cemetery.[14]  Thus, the lack of compliance with § 157.065(1) indicates that the one-acre parcel may not be used for future burials.

¶36 Additional statutory requirements provide further support.  Section 157.062(1) describes the requirements necessary to create a cemetery association.  Specifically, at least seven residents of the same county are required to form a

---

[13] A "cemetery authority" is defined as "any person who owns or operates a cemetery specified in s. 157.065(1)."  Wis. Stat. § 157.061(2).

[14] At oral arguments before this court, counsel for the DeWitts conceded that to the DeWitts' knowledge, no cemetery authority had ever been formed.  Counsel for the DeWitts further indicated that the DeWitts do not seek to form a cemetery association because they do not want the responsibility of maintaining this parcel as a cemetery.  Instead, the DeWitts seek to compel the Town to do so.

15

cemetery association. Wis. Stat. § 157.062(1). Once formed, cemetery associations must meet annually and elect trustees. Id. With limited exceptions, cemetery associations must maintain records of all human remains buried within a cemetery, and file annual reports with the cemetery board. §§ 157.062(5), .62, .625; Wis. Admin. Code CB §§ 2.02, .06. Further, most cemetery authorities must either apply to the cemetery board for a license or register with the board. Wis. Stat. §§ 440.91(1)(a), (1m)(a), (6m).

¶37 Wisconsin Stat. § 157.07(1) further requires that cemetery authorities survey and plat the land, and record the maps or plats with the register of deeds. It provides that cemetery authorities "shall cause to be surveyed and platted by a professional land surveyor those portions of the lands that are from time to time required for burial, into cemetery lots, drives, and walks, and record a plat or map of the land in the office of the register of deeds." § 157.07(1). If the cemetery authority fails to record a plat or map, "the plat shall be void, and no sale of a cemetery lot . . . may be made before the plat is recorded." § 157.07(4). There is no evidence in this record that a cemetery authority was ever formed, or that it platted land or filed a plat or map with the register of deeds.

¶38 In sum, we conclude that the parcel does not satisfy the statutory definition of a "cemetery." The detailed statutes and regulations governing cemeteries indicate that a certain degree of formality is required to form a cemetery. The record does not support a determination that any such formalities were

16

met here.  Absent the formation of a cemetery, the cemetery transfer statute, Wis. Stat. § 157.115(1)(c), cannot be invoked.

IV

¶39 Relying on Wilder v. Evangelical Lutheran Joint Synod of Wisconsin & Other States, 200 Wis. 163, 167, 227 N.W. 870 (1929), the DeWitts advance that even if the requirements of chapter 157 are not met, the one-acre parcel is nevertheless a cemetery.  They assert that once established, a cemetery does not lose its character as a "resting place of the dead" until the bodies buried there are exhumed and removed.  See id. at 167 (citing Kansas City v. Scarritt, 69 S.W. 283, 286 (Mo. 1902)).  Because there are no existing facts of record that any bodies were exhumed or removed from the parcel, the DeWitts argue that the parcel retains its character as a "cemetery."

¶40 According to the DeWitts, language in various late nineteenth-century conveyances is sufficient to establish that the parcel is a "cemetery."  Specifically, the DeWitts point to an 1898 warranty deed conveying the one-acre parcel that contained the following description:  "Said land to be used for a cemetery and burial and no other purpose."  Several other deeds dated between 1892 and 1898 similarly conveyed land with an exception for "one acre now used as [a] cemetery."

¶41 The Ferries and the Town disagree with the DeWitts. They assert that not only have the DeWitts failed to establish that the parcel meets the current statutory definition of a "cemetery," but they also have failed to prove that the parcel ever became a "cemetery" in the late nineteenth-century.

17

¶42 The DeWitts' reliance on Wilder is misplaced. In Wilder, a cemetery had been platted and recorded with cemetery lots conveyed by warranty deed, but had not been used for burials for 36 years. Id. at 164-65. A neighboring college began encroaching on dilapidated cemetery lands by erecting a fence around the cemetery as well as a garage and pergola that extended onto the cemetery grounds. Id. at 165-66. Relatives of decedents buried in the cemetery sought to enjoin the college from occupying and trespassing on the cemetery grounds. Id. at 164.

¶43 Wilder concluded in relevant part that the college was enjoined from occupying, possessing or trespassing upon the cemetery property until the remains of those buried were removed from the cemetery. Id. at 170. It explained that "[a] cemetery is none the less a graveyard because further interments in it become impossible. It only loses its character as a resting place of the dead when those already interred are exhumed and removed." Id. at 167 (citing Kansas City, 69 S.W. at 286). Accordingly, the Wilder court concluded that:

> Until all remains of their kindred have been removed, the . . . relatives of those still buried there, who desire to visit and preserve the graves and this small cemetery tract from desecration, are entitled to invoke the equitable powers of the court to enjoin repeated trespasses and unwarrantable disturbances upon the cemetery grounds.

Id. at 168.

¶44 The DeWitts contend that because there is no evidence of record that any buried bodies have been exhumed or removed

18

from the parcel, it therefore retains its character as a "resting place of the dead." However, relevant to the Wilder court's determination was the fact that various formalities occurred when the cemetery was established. Specifically, the court explained that it was platted and recorded. Id. at 164. Additionally, it observed that the cemetery lots were conveyed by warranty deed, which conferred rights on the descendants of those buried in the cemetery. Id. at 164, 166, 169.

¶45 In spite of the fact that the record here contains no evidence that any cemetery lots were conveyed or that any formalities were undertaken to establish the parcel as a cemetery, the DeWitts nevertheless contend that the stated intended use is sufficient to constitute a cemetery. Yet, they provide no authority for their assertion that conveying property with the intention that the land be used exclusively for cemetery purposes is sufficient to establish that a cemetery has been formed.

¶46 Although there was no statutory definition of a "cemetery" in effect in the late nineteenth-century, various formalities regarding cemetery formation and management were enumerated at that time, as they are today. See Wis. Stat. ch. LIX, §§ 1438-55a (1889) (in effect from October 1, 1889 until August 31, 1898). For example, after purchasing grounds to be used as a cemetery, towns were required to survey, divide and plat cemetery grounds into lots, enclose the cemetery grounds with a suitable fence, and file a map of the cemetery with the town clerk. Wis. Stat. ch. LIX, § 1438 (1889).

19

¶47 The 1889 statutes also set forth formal requirements for the formation of cemetery associations, including provisions for the election of trustees and incorporation of the association. See Wis. Stat. ch. LIX, § 1442-1445 (1889). Specifically, land acquired by a cemetery association for burial purposes:

> . . . shall be surveyed and divided into lots of such size and with such avenues, alleys and walks as the trustees may deem proper; and maps of said surveys shall be filed and recorded in the office of the register of deeds before any lots designated thereon can be sold and conveyed by the trustees of such association . . . .

Wis. Stat. ch. LIX, § 1447 (1889).

¶48 Additionally, the statutes specified that on the first day of January of every year the treasurer or financial officer of a cemetery corporation, society or association was required to file a written report to the judge of the county where the cemetery was located, "showing in detail the amount of [] trust funds and property which has been received by said corporation . . . ." Wis. Stat. ch. LIX, § 1447b (1889). The above-mentioned provisions suggest that like today, various formalities were required to form and manage a "cemetery" in 1898.

¶49 This court previously concluded that various formalities have long been required to form and manage a "cemetery." In Town of Blooming Grove v. Roselawn Memorial Park Co., 231 Wis. 492, 493, 286 N.W. 43 (1939), a cemetery corporation was organized and incorporated under the Wisconsin

statutes for the purposes of establishing a cemetery. The cemetery corporation acquired 25 acres of land for that purpose, recorded a cemetery plat, divided the plat into cemetery lots, sold many lots, and made various valuable improvements to the cemetery land. Id. at 493-94.

¶50 However, no burials had yet occurred when the Town of Blooming Grove sought to restrain and enjoin the cemetery corporation from acquiring additional property to extend the cemetery beyond its existing limits. Id. According to the Town, it did not meet the statutory definition of a cemetery "now in use" because no burials had occurred at that point. Id. at 494-96.

¶51 The Blooming Grove court concluded that the cemetery was "now in use" despite the absence of any burials because 25 cemetery acres had been platted, the plat was approved by the town and divided into cemetery lots and blocks, and many lots had been sold for burial purposes. Id. at 496, 499. It explained that "[i]f the legislature had intended that actual burial was to be the test, it would no doubt have so stated." Id. at 496.

¶52 Thus, Blooming Grove supports the proposition that formality beyond internment of bodies——namely the forming and incorporating of a cemetery authority, recording plats, dividing those plats into lots, and conveying those lots——is required to establish a cemetery. Id. at 493, 496, 499; see also Highland Mem'l Park, Inc. v. City of New Berlin, 67 Wis. 2d 363, 368, 227 N.W.2d 72 (1975) (relying on Blooming Grove to conclude in

21

relevant part that a cemetery was "now in use" when it had been dedicated and platted and burials had occurred).

¶53 Unlike in Blooming Grove, the DeWitts have failed to establish that any formalities were undertaken to form a cemetery at any point in time.  Thus, the DeWitts failed to establish that this parcel ever became a "cemetery" in the first instance.

¶54 Finally, we observe that although the issue of whether this parcel is a "burial site" is not before this court, the circuit court made two relevant findings of fact addressing the issue.  The circuit found that "[t]he petitioners believe that 25-30 bodies were interred in the Cemetery before 1918" (emphasis added).  It made a further finding that the Vernon County Register of Deeds "received a letter from the State Historical Society stating that the Cemetery had been 'cataloged,' as provided for under the 'Burial Sites Preservation' law."[15]

¶55 Wisconsin's Burial Sites Preservation law is separate and distinct from the statutes governing "cemeteries."  Compare Wis. Stat. § 157.70 with § 157.061-.65.  Because it has been cataloged as a "burial site" by the State Historical Society, this parcel is currently governed by the restrictions and

---

[15] The record relied upon by the State Historical Society is not in the record in this proceeding.

22

protections provided by Wisconsin's Burial Sites Preservation law.[16]  See Wis. Stat. § 157.70.

¶56  In sum, we conclude that the DeWitts failed to prove that this parcel is a cemetery.  Therefore, the parcel is not subject to the transfer mechanism set forth in Wis. Stat. § 157.115(1)(c), which applies only to cemeteries.  Because we determine that this parcel is not a cemetery, we need not address whether the other requirements of Wis. Stat. § 157.115(1)(c) are satisfied here.  Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

---

[16] The Burial Sites Preservation law defines a "burial site" as "any place where human remains are buried."  Wis. Stat. § 157.70(1)(b).  "Burial sites" may not be intentionally disturbed without a permit issued by the Director of the State Historical Society.  §§ 157.70(2r) & (5)(a).  To "disturb" a burial site includes "defacing, mutilating, injuring, exposing, removing, destroying, desecrating or molesting in any way."  Wis. Stat. § 157.70(1)(e).  Regulations also provide a mechanism for the removal of a site from the catalog of burial sites if the Director of the State Historical Society determines that there is sufficient evidence indicating that a cataloged site does not contain any burials.  Wis. Admin. Code HS § 2.03(6).